Patton, Warden, *v.* The State, *ex rel.* McCann.

No. 14,405.

PATTON, WARDEN, *v.* THE STATE, EX REL. MCCANN.

MANDATE.—*Prison Warden.— Warrant for Fuel Purchased.*—The warden of a State prison may be compelled by mandate to draw a warrant for fuel purchased for the prison by his predecessor, it being the duty of the warden, under sections 6140 and 6141, R. S. 1881, to purchase fuel and pay for it by drawing a warrant.

SAME.—*Return.—Fraud.—Mistake.*—A return by the warden alleging that the claim was rejected by the directors of the prison because they adjudged that there were improper weights, mistakes in calculations and inferiority in the quality of the fuel, but not alleging that there actually was fraud or mistake, is bad.

From the Clark Circuit Court.

*L. T. Michener,* Attorney General, *C. L. Jewett, H. E. Jewett* and *J. H. Gillett,* for appellant.

*A. G. Caruth* and *F. B. Burke,* for appellee.

ELLIOTT, J.—In the petition for the writ of mandate which issued in this case, the relator averred that under an agreement with Andrew J. Howard, then the warden of the Indiana State Prison South, he sold and delivered to Howard, for the use and benefit of that prison, a great quantity of coal for fuel; that after the delivery of the coal he presented his account, verified by the affidavit of Matthew L. Huette, keeper of accounts of the prison, to James B. Patton, who succeeded Howard in the office of warden, and that he refused to draw his warrant for the amount due the petitioner. The alternative writ contains substantially the same statement. Patton's return is in four paragraphs. The first is a general denial. The second alleges that the appellee's account was presented to the directors of the prison; that they inspected it and refused to allow it in full, but ordered an allowance for part of it. The third paragraph alleges substantially the same facts as the second; the differ-

ence between the two paragraphs is, that the third alleges that the directors heard evidence, and rejected the account because of improper weights, mistakes in calculation, and the inferior quality of the coal. The fourth paragraph simply alleges that the appellant was ready and willing to · draw a warrant for the amount due the appellee. To the second and third paragraphs of the return the relator successfully demurred.

It will be noticed that the second and third paragraphs are based solely on the action of the directors, and that it is not alleged that there was any fraud or wrong on the part of the relator, nor is it averred that the coal was inferior or that the weights were incorrect, or that there was any mistake in the calculations. It is, it is true, alleged that the directors rejected the account for the reason stated in the third paragraph; but it is not alleged that there was in fact any wrong on the part of the appellee's relator, or any inferiority in the coal, or any mistake in the calculations, so that the controlling question resolves itself into this: Had the directors authority to reject the petitioner's claim? In our judgment they had no such authority.

Section 6140, R. S. 1881, reads thus: " The warden shall attend to the purchasing of all articles for the institution, clothing, provisions, medicines, materials for buildings and repairs—said materials to be manufactured in the penitentiary. He shall have charge of the whole operations of the institution, and shall be its executive officer. But no contracts shall be made wherein any of the directors or officers of the institution are interested."

It is provided in section 6141 that the warden shall pay to the treasurer of State all money that he receives, and that " all accounts for claims against the penitentiary, for salaries, provisions, clothing, medicines, repairs, buildings, fuel, etc., shall be drawn on the order of the warden, countersigned by at least one of the directors." These statutory provisions make it the duty of the warden to buy fuel and to pay for it by

drawing a warrant. The duty to draw the warrant for fuel sold and delivered to the warden for the use of the penitentiary is not a discretionary one, but, on the contrary, is an imperative duty. As the duty is imperative, its performance may be coerced by mandate. The remedy adopted is the appropriate one.

We do not doubt that if the warden should discover that there was any fraud or mistake in a claim presented to him, he might reject it, or require the proper correction to be made. But there is no such case presented by the pleadings, for it is not averred that there was actually fraud or mistake. All that is alleged is that the directors so adjudged.

The appropriation act of 1885 does not repeal or modify the former statute in respect to the questions here involved.

There is evidence supporting the finding.

Judgment affirmed.

Filed Jan. 4, 1889; petition for a rehearing overruled Feb. 20, 1889.