Stóvall v. Perry.

A. W. STOVALL, County Judge, *v.* J. G. PERRY, Sheriff.

(*Jackson.*   April Term, 1916.)

1. SHERIFFS AND CONSTABLES.   Compensation.   County prisoners.

Under Acts 1870-71, chapter 7, a county sheriff is entitled to have advanced to him monthly by the county the jail fees accrued to him for the keeping of county prisoners.  (*Post, pp.* 708, 709.)

Acts cited and construed:   Acts 1870-71, ch. 7.

2. STATUTES.   Title of acts.   Counties.   Prisons.

Acts 1870-71, chapter 7, providing for monthly payment to sheriff by a county of fees for county prisoners, does not violate Constitution article 2, section 17, providing that the subject of a bill be expressed in its title, since it refers in its caption to section numbers of the Code, and states that those sections are to be amended in relation to jail fees; and its fifth section, providing for reimbursing the county from amounts collected from defendant, is incidental to the general subject.  (*Post, pp.* 709-715.)

Acts cited and construed:   Acts 1891, ch. 22;   Acts 1897, ch. 20, sec. 1, subsec. 3.

Codes cited and construed:   Code 1858, sec. 5430, 5431, 5432.

Constitution cited and construed:   Art. 2, sec. 17 (1870).

3. STATUTES.   Amendment.   Reference to act amended.

Acts 1870-71, chapter 7, providing for monthly payment to sheriff by a county of fees for county prisoners, does not violate Constitution article 2, section 17, providing that acts shall recite in their caption, or otherwise, the title or substance of a law to be amended, since it refers in its caption to the section numbers of the Code, and states that these sections are to be amended in relation to jail fees.  (*Post, pp.* 709-715.)

FROM MADISON

Appeal from the Circuit Court of Madison County. —I. J. Everett, Judge.

W. H. Biggs and A. W. Stovall, for appellant.
L. L. Fonville, for appellee.

Mr. Chief Justice Neil delivered the opinion of the Court.

The defendant in error, who is the sheriff of Madison county, claims that he is entitled to·have advanced to him monthly, by the county, the jail fees accrued to him for the keeping of county prisoners. The plaintiff in error, who is county judge of the same county, denies the soundness of this claim, and he instituted the present action to contest it. We think the sheriff's contention is correct.

The decision turns on the provisions of chapter 7 of the Acts of 1870-71. This act reads as follows:

"Section 1. Be it enacted by the general assembly of the State of Tennessee, that the law which regulates the fees of sheriffs and jailers be so changed as to allow jailers to collect their fees monthly, both State and county.

"Sec. 2. Be it further enacted, that the fees of jailers be taxed separate from the general bills of costs of criminal cases. That all State cases be properly

proven and sworn to before the clerk of the criminal or circuit court of his county, and certified to the comptroller for payment after being carefully examined and certificates of the judge and attorney-general affixed thereto.

"Section. 3. Be it further enacted, that the fees for county prisoners be referred monthly to the judge or chairman of the county court for inspection, who shall audit the same and cause the clerk to issue a warrant for the amount presented.

"Sec. 4. Be it further enacted, that all laws in conflict with the foregoing amendment, so far as it pertains to jailers' fees, be and the same are hereby repealed.

"Sec. 5. Be it further enacted, that if, after hearing of any case in any of the courts upon which the costs of jailers' fees, or any part thereof, has been paid as provided in this act, any of the sum be collected off of the defendant, the same be placed in the State treasury or county treasury, to reimburse the State or county. This act to take effect from and after its passage, the public welfare requiring it."

In our opinion, there can be no doubt that the sheriff's claim is supported by the third section of the act.

It is insisted, however, that the act is unconstitutional on several grounds:

Firstly, that the provisions contained in the body of the act do not fall within the purview of the sections of the Code, which the caption refers to for

amendment, and therefore the body is broader than the title, making the whole act void under article 2, section 17, of the Constitution of 1870; secondly, that the act does not state, either in its caption or in the body thereof, the title or substance of the law to be amended, as required by the section of the Constitution just referred to, because the section really amended was section 5432 of the Code, instead of sections 5430 and 5431. We shall consider these two objections together.

We thing that the sections mentioned in the caption were really the sections amended, and not section 5432. Section 5430 reads:

"Sheriffs and jailors shall make out their accounts for keeping prisoners, in writing, specifying each item and the amount due therefor distinctly, and having first had the same examined and certified."

Section 5431:

"It is the duty of the attorney-general and the Judge to inspect said accounts, examining witnesses, if necessary, touching the same, and, if the charges are legal to certify the facts on such accounts."

The subject of the legislation is sufficiently indicated by reference in the caption to the section numbers of the Code, joined with the statement that these sections, 5430 and 5431, are to be amended in relation to jail fees. When the term "Code" is used in this State it always means the Code of 1858, the only one we have ever had. We have had several useful compilations, usually spoken of as "Thompson & Steger's Code," "Milliken & Vertrees' Code," and "Shannon's Code,"

all prepared since the Code of 1858, but they are known by all persons familiar with matters of the kind, as works of private enterprise merely, not Codes published by authority. As stated, all of these are works of merit, and very useful, and they are constantly referred to in our Reports, of late years particularly the work last mentioned, because they undertook to codify the legislation enacted subsequent to the Code of 1858, and to draw such legislation in direct relation to the provisions of the said Code. But they are always cited with the name of the author, while the Code of 1858 is always cited as simply Code, or the Code of 1858. Moreover, the various compilations referred to were all produced subsequent to December 8, 1870, the date of the passage of chapter 7 of the Acts of 1870-71. Therefore, beyond question, the use of the words "the Code" indicated the Code of 1858. The reference to the sections by their numbers was sufficient to indicate their contents, since "the Code" was but a single act; its name, with its section number, must always lead unerringly to the contents of any section cited. Therefore by the reference to the section members the legislation to be amended was fully recited. But it is contended that those sections, when examined, relate to a subject different from that which is legislated on in the body of the Acts of 1870-71. They relate to jail fees, and that is sufficient. It is true the legislation therein contained is directed only to the making out, examination, and certification of such fees, but the sections are embraced under a general heading, "Of

the Compensation of Jailor,'' at the beginning of the
''article'' or chapter division under which they appear,
and they are a part of the Code, and are to be viewed
as such. An amendment of a section of the Code is an
amendment of the Code itself. The sections then,
when considered for purposes of amendment, are not
to be viewed out of their setting. They usually cover
only a small part of the general subject which embraces
them, that subject itself a part of a general scheme of
legislation. It is not proper therefore to treat the par-
ticular aspect of a general subject legislated about in
a section of the Code like the title of an act, and say
that the amendatory matter must be such as could orig-
inally have fallen under that particular aspect. If
this were true, it would fall out that a section drawn
with strict logical accuracy, covering a single point
under our Constitution, could not be amended. We
must always take into consideration the general sub-
ject of which the section forms a part in its relation to
that section. If the amendment offered falls within
such general subject, and is itself related, though it
may be remotely, to the special contents of the section,
that is sufficient. Now in the case before us the gen-
eral subject is jail fees. While the amendatory mat-
ter did not in all of its parts, though it did in some,
relate to the special matters of making out the account,
inspecting, and certifying it, yet it did altogether fall
within the general subject of jail fees, and, moreover,
bore a special relation to the payment of such fees, to

which end the accounts were to be made out, inspected, and certified.

But a third objection is made to the constitutionality of the amendatory act, on the ground that the fifth section does not fall within the title of such act. This is a mistaken view. The contents of the fifth section were merely incidental to the general subject, and also to the matter contained in the prior sections. Having provided, in effect, that the jail fees should be paid monthly to the jailor or sheriff, in advance of the collection from defendants against whom they had accrued, it was but a natural sequence that a section should be added directing that these funds, when collected, should be turned into the county or State treasury, as the case might be.

The policy of the act is assailed in very vigorous terms. It is said that, if the act be held void, a great field will be opened for fraud and "grafting." The act has been in force for more than forty years, and we have heard of no frauds committed under it. The particular and special provisions laid down for making out the account, inspecting, and certifying it, in our judgment, reduce the opportunity of fraud to a minimum. After passing the inspection of the judge and attorney-general, the jail fees in county cases (the only class now before us) must pass a third scrutiny, that of the county judge or chairman. If the latter officers, in the several counties of the State, prove themselves in any approximate degree as efficient as the able and diligent county judge of Madison county,

there will be practically no avenue left through which fraud can enter.  Though, strictly speaking, we have in general no concern with the policy of an act, if it be a valid act, the question of policy being a matter for the consideration of the legislature, still we have deemed it proper to take note of the strictures made, because we believe the policy which dictated the legislation is sound and good.  It is both just and humane because it makes sure that prisoners shall receive the care which the law intends they should have, and it relieves sheriffs and jailors (men generally of small means) of the necessity of advancing money for the State or county, or of going in debt for supplies.

It is said the fees claimed in the present case cannot be allowed because there was no judgment followed by execution and *nulla bona* return.  This is not material.  The legislature had the power to direct the payment of the jail fees in advance, to be ascertained in the manner already stated, before the entry of judgment.  Having exercised the power, no one can gainsay the act.  No subsequent legislation has been called to our attention, and we have no knowledge of any, indicating a different policy as to county cases.  Section 1, subd. 3, of chapter 20, Acts of 1897, declares that fees of the kind we have under examination here ''shall be paid in all cases as heretofore.''

It is said at all events the Acts of 1870-71 should not be so construed as to compel the county to pay jail fees in advance regardless of whether the costs shall be adjudged against the county or the defendant.  No

Stovall v. Perry.

other construction is possible.  No question could arise, of course, as to costs finally adjudged against the county.  Section 5 shows that the legislature had in mind cases wherein the costs might be adjudged against the defendants.  Both aspects of the subject were intended to be covered.  Furthermore, the policy which dictated the act could be satisfied by no other construction.

It is insisted that the act in question was repealed by Acts 1891, chapter 22, and Acts 1893, chapter 138, amending the act of 1891.  We have examined these acts with care, but have been unable to find in either of them any reference to jail fees in county cases. There is a reference in the latter act to such fees in the class of cases in which the State is liable.  Whether as to the latter class of cases the act of 1893 repeals or modifies the act of 1870-71 we think we should not consider in the present case, because we have before us now only the question of the county's liability.

No error being found in the judgment of the trial court, it is in all things affirmed.

The county of Madison will pay the costs of this court and of the court below.