STATE *ex rel.* CALLOWAY, Sheriff, *v.* GEORGE M. TROTTER, County Judge.

(*Knoxville.* September Term, 1919.)

1. **PRISONS.** Sheriff to receive pay only for meals actually furnished.

Under Pub. Acts 1875, chapter 43, as amended by Pub. Acts 1917, chapter 61, section 1, a sheriff is only entitled to receive pay for meals actually furnished a prisoner on a basis of 50 cents for three meals, and where only one meal is furnished on one day, and the prisoner is discharged before the time for serving the next meal, he is entitled to receive only pay for one-third of a day. (*Post, pp.* 167, 168.)

Acts cited and construed: Acts 1875, ch. 43; Acts 1917, ch. 61, sec. 1.

2. **PRISONS.** Sheriff's duties as to furnishing water to prisoners stated.

Under Pub. Acts 1875, chapter 43, section 1, as amended by Pub. Acts 1917, chapter 61, section 1, and Shannon's Code, sections 7430, 7431, it is the duty of the sheriff to see that prisoners in a county jail are supplied with wholesome drinking water, but he need not furnish such water at his own expense, and certainly not water used and required by the statutes in keeping cells clean, etc., and he need not pay water rents. (*Post, pp.* 168-171.)

Code cited and construed: Secs 7430, 7431 (S.).

3. **PRISONS.** Sheriff not entitled to recover from county money paid for bug killer purchased.

A sheriff is not entitled to recover of the county for "bug killer" purchased on his own initiative, where the county maintained a committee known as the "courthouse and jail committee," whose duty it was to purchase all supplies necessary for the courthouse and jail. (*Post, pp.* 171, 172.)

## FROM KNOX.

Appeal from the Chancery Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.— HON. ROBT. M. JONES, Special Chancellor.

W. J. DONALDSON, GREEN & WEBB and L. D. SMITH, for appellant.

JAMES G. JOHNSON, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

In this cause the relator, John L. Calloway, then sheriff of Knox county, filed his petition in the name of the State of Tennessee on October 19, 1917, against George M. Trotter, judge of the county court of Knox county, asking for a writ of mandamus to require said county judge to issue to him a warrant for certain fees, expenses, etc., incident to the keeping and feeding of the prisoners confined in the jail of said county. The fees and expenses sought to be collected aggregate the sum of $862.33, and may be divided into three classes of items as follows:

(1) The relator alleges that he bought, for use in the jail, a preparation known as "bug killer," which was used in the jail to kill bugs, lice, and other vermin; that this article was a necessary article for use in the jail for the protection of the prisoners, and that it was the legal duty of the county to purchase and furnish

11—142 Tenn.

the same; that he paid for this preparation the sum of $408.90 for which amount he had not been reimbursed by the county.

(2) He alleges that the county is indebted to him for water rents, which he paid to the water department of the city of Knoxville, for water used in the jail begin-sing October 1, 1916, up to and including the month of August, 1917, the sum of $203.75, for which amount he had been refused payment by the county.

(3) He also insists that the county is due him the aggregate sum of $249.68 on his jail account for feeding prisoners committed to the jail up to September 1, 1917.

The defendant answered the petition, denying that it was the duty of the county to furnish the "bug killer" for cleansing the jail of bugs, lice, and other vermin, but that this duty rested upon the sheriff, and for that reason payment to the relator was refused by the defendant.

The answer further avers that even if it were the duty of the county to furnish, for use in the jail, the article known as "bug killer," the relator had no authority to purchase the same and make it a charge against the county, because the county, at all times, had a regularly, duly appointed and constituted committee known as the "courthouse and jail committee," through whom needed supplies for the courthouse and jail were purchased.

The answer also denied that the county was indebted to the relator for water rent paid the city of Knoxville, as set out in paragraph 3 of the petition, because, under

State ex rel. v. Trotter.

the law, the sheriff, as jailer, is onerated with 'the duty of furnishing the necessary water for use by the prisoners and in cleansing the jail.

The answer likewise denied that the county was indebted to the relator for any sum growing out of the feeding of prisoners confined in the jail; the answer averring that the relator had been paid for all of the meals furnished by him to the prisoners confined in the jail during the term mentioned in his petition, and the reason for not paying the other items shown in the account of the relator was because the service had not been performed and the meals were not given; that said items were unjust and illegal, and the county could not be compelled to pay the same.

It was admitted by the defendant that the relator had been paid only for the meals actually furnished prisoners confined in the jail; it being insisted by the defendant that the relator is not entitled to the 50 cents per day provided by the statute for feeding prisoners unless he gives the prisoners three meals, and if he furnishes a less number he is entitled to pay only for the meals actually served on the basis of 50 cents for three meals, and in settling the relator's account for jail fees he paid him for fractions of days only where three meals were not furnished, and not for a full day, which the relator claimed he was entitled to.

Upon the hearing the special chancellor sustained the contention of the defendant that the sheriff had no right to collect from the county for the "bug killer" purchased by him upon his own initiative and without authority from the county or the "courthouse and jail committee," and this claim was disallowed.

State ex rel. v. Trotter.

As to the claim for water rents paid by the relator, he construed the statute to obligate the sheriff to supply drinking water only to the prisoners confined in the jail, the county being obligated to furnish water for all other purposes; and because the amount of drinking water, in proportion to the whole amount of water required in the jail, was so infinitely small, he granted the relator a full recovery for water rents, and also awarded the relator a recovery for the balance claimed to be due on his jail account for feeding prisoners, being of the opinion that the sheriff was entitled to recover for a full day's board where he furnished the prisoner as much as one meal, the prisoner being discharged before the time for serving another meal had arrived.

From this decree the defendant appealed to the court of civil appeals, and assigned errors. The relator filed the record in that court for writ of error, and assigned errors upon that portion of the decree denying relator a recovery for the "bug killer" furnished by him for use in the jail.

The court of civil appeals affirmed that part of the decree of the special chancellor denying the relator a recovery for the "bug killer" purchased, but reversed said decree in so far as it allowed him a recovery for the water rent sued for. That court affirmed that portion of the decree allowing the relator a recovery for the balance alleged to be due for feeding prisoners confined in the jail.

Both the relator and the defendant have filed petitions for writs of *certiorari*, and the cause is now before this court for review. The relator seeks to have

reversed that portion of the decree of the special chancellor and the court of civil appeals which denied him a recovery for the "bug killer" purchased. Also that portion of the decree of the court of civil appeals which denied him a recovery for water rent.

The defendant seeks to have reversed so much of the decrees of the chancellor and the court of civil appeals as gives the relator a recovery for the balance alleged to be due him on account of feeding prisoners while confined in the jail.

We are of the opinion that the question of whether the county is liable to the relator for the balance alleged to be due him for feeding prisoners confined in the jail, and for water rent paid the city of Knoxville for water used in the jail, both for drinking and cleansing purposes, depends upon a proper construction of chapter 43 of the Public Acts of the Legislature of 1875, as amended by chapter 61 of the Public Acts of 1917. By chapter 43 of the Acts of 1875, it is provided as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that hereafter all jailers in this State who shall furnish good wholesome water, diet and bedding, shall be entitled to receive forty cents per day for keeping and feeding each prisoner in his jail; that the jailer shall be entitled to have and receive for each prisoner forty cents per day, and one dollar for each turnkey, and there be but two turnkeys for each prisoner, instead of sixty cents, as now provided by law; provided, that no allowance shall be made to jailers under the provisions of this act by county courts,

unless a committee of three justices to be appointed by the county court, shall have reported to said court that he jailer has complied with the provisions of this act in reference to food, water and bedding."

It will be observed that the above-quoted act provides for the payment of 40 cents per day for the keeping of prisoners, and provides for two turnkeys at $1 each. This act, as amended by chapter 61 of the Acts of 1917, reads as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that hereafter all jailers in this State who shall furnish good wholesome water, diet and bedding, shall be entitled to receive fifty cents per day for keeping and feeding each prisoner in his jail; provided that three meals a day be furnished said prisoners and that no sheriff shall be allowed compensation for feeding prisoners unless after commitment he actually feeds said prisoners; that the jailer shall be entitled to haul [have] and receive for each prisoner fifty cents per day, and one dollar for each turnkey, and there be but two turnkeys for each prisoner; provided, that no allowance shall be made to jailers under the provision of this act by county courts, unless a committee of three justices to be appointed by the county court, shall have reported to said court that the jailer has complied with the provisions of this act in reference to food, water, and bedding. Provided that the sum of fifty cents shall only be allowed after the county court committee shall report that that sum should be so paid it being in the discretion of the county court as to whether the sum of 50 cents shall be allowed."

State ex rel. v. Trotter.

It will be observed that the amended act fixes the compensation of the jailer for keeping and feeding each prisoner at 50 cents per day instead of 40 cents, and the act further expressly provides, in substance, that this amount shall be paid only in the event that three meals a day be furnished the prisoner; that it is further expressly provided ''that no sheriff shall be allowed compensation for feeding prisoners unless after commitment he actually feeds said prisoners.''

We are of the opinion that it is contemplated by the act that the prisoner must be fed three meals by the sheriff or jailer before he is entitled to receive the full sum of 50 cents. If he furnishes less than three meals, he is only entitled to receive pay for the meals actually furnished the prisoner on the basis of 50 cents for three meals. In other words, if he furnishes only one meal, and the prisoner is discharged before time for serving the next meal arrives, he is not entitled to receive pay for three meals, or for a full day's board, but is only entitled to receive pay for one-third of a day, or 16 2/3 cents. We think this is the true interpretation of the statute, and is in accordance with its express provisions. In other words, we think the peculiar language of the amendatory act changed the general common-law rule, which recognizes only full days and not fractions of days. We think this is true because the act provides, in substance, that jailers ''who shall furnish good wholesome water, diet and bedding shall be entitled to receive fifty cents per day for keeping and feeding each prisoner in his jail; provided that three meals a day be furnished said prisoners.''

We think, therefore, that the special chancellor and the court of civil appeals erred in allowing the relator a recovery for the balance alleged to be due him for keeping and feeding prisoners.

We will now pass to a consideration of the question of whether the relator is entitled to recovery for the item of water rent.

The record discloses that the jail of Knox county is a modern jail. It is equipped with shower baths on each floor, toilets in each cell, and sewerage that is necessary to scour the cells with soap and water once each week to keep them in a sanitary condition; that it requires the use of a large quantity of water to keep said jail in a sanitary condition, and for bathing the prisoners and flushing the toilets. Water for these purposes is furnished by the water department of the city of Knoxville, which is delivered into the jail by means of pipes constructed at the expense of the county. It may be said that the bathing facilities, toilets, and sewerage with which the jail is equipped were likewise provided by the county at its own expense.

The insistence of the defendant that the sheriff is legally bound to furnish the water necessary for these purposes is grounded upon the language contained in the act of 1917, hereinbefore quoted, and, in sections 7430 and 7431 of Shannon's Annotated Code. Section 7430 reads as follows:

"It is the duty of the jailer to furnish prisoners with clean beds, and sufficient blankets and other bed clothing to keep them comfortable, and to provide them with two meals a day of good, sound bread and meat, well cooked,

with vegetables in addition at one of the meals, and plenty of good, clean water twice a day from the first of May to the first of November, and once each day from the first of November to the first of May."

Section 7431 reads: "The jailer shall also have two pieces of clothing for each prisoner washed every week, and furnish the necessary apparatus for shaving once a week, and shall keep the jails clean, and remove all filth from each cell once every twenty-four hours."

The provisions contained in the foregoing sections of the Code are substantially the provisions of section 1, chapter 45, of the Acts of 1826. The provisions of which act, in so far as it relates to the number of meals which shall be furnished to prisoners, has been repealed by the later acts hereinbefore quoted.

We are of the opinion that, while it is the duty of the sheriff or jailer under these acts to provide the prisoners with wholesome water for drinking purposes, and it is made his duty to keep the jail clean, he is under no legal obligation to purchase and supply at his own expense the water necessary for these purposes. Chapter 45 of the Acts of 1826, and chapter 43 of the Acts of 1875, which provide that the jailer shall furnish to the prisoners clean, wholesome water, were passed at a time when practically all the towns and cities of this State were without the modern facilities for supplying water to their inhabitants and institutions. It is a matter of common knowledge that at the time of the passage of said acts water, in most instances, was supplied from springs and wells which might be located on the premises or near by. In those days water was

not considered an item of expense. It is a matter of common knowledge that at the present day, in all of our cities and principal towns, water is supplied to the inhabitants and institutions thereof either by the municipality itself or by a licensed water company for a reward or compensation. In other words, it is necessary for the citizen to purchase the water necessary for his use. We do not think that it was contemplated by the statutes hereinbefore referred to and quoted that the jailer should, at his own expense, purchase and supply even drinking water for the use of prisoners confined in his jail. We think the true interpretation to be given said statutes is that the jailer shall deliver water to the prisoner for drinking purposes from the spring, well, or other facility located on the jail premises. In other words, it is the duty of the jailer under the statutes to see that the prisoner while he is incarcerated, is supplied with wholesome drinking water, but this does not mean that the sheriff is required to furnish such water at his own expense. We think the statutes referred to contemplate that such water shall be supplied and delivered on the premises by the county, and the record shows, in the cause under consideration, that this is the interpretation given these statutes by the officials of every other county in the State, and was the construction placed upon said statutes by the officials of Knox county prior to the election and induction into office of the relator.

The undisputed evidence shows that Knox county, at a considerable expense, equipped its jail with the necessary facilities for piping and delivering water to it

for the use of the prisoners confined therein from the city's water department, and up until the election and induction into office of the relator had always paid for the water used in its jail. There can be no sort of ground for the insistence that the sheriff or jailer is liable for the cost of the water consumed in cleansing the jail, flushing the toilets, and for the bathing of the prisoners. It is true that the statutes provide that the jailer shall keep the jail clean, but this does not imply that he must furnish the water and appliances necessary for cleansing the jail. We think this duty is upon the county, and it is the duty of the sheriff, by the use of the water and other appliances furnished, to keep the jail clean.

As to the insistence of the relator that he is entitled to recover of the county for the "bug killer" purchased on his own initiative, we are of the opinion that he is not entitled to recover for this item. The undisputed evidence is that the county maintained a committee known as the "courthouse and jail committee," whose duty it was to purchase all supplies necessary for the courthouse and jail. There is evidence in the record to the effect that the county, at the time this "bug killer" was purchased by relator, had on hand and stored in the basement of the courthouse a large quantity of disinfectant of the same kind and character as the "bug killer" purchased by the relator. This is controverted, however, by the relator. We think the question of whether the county had such disinfectant on hand is immaterial. The relator's action in purchasing the "bug killer" was without authority. The record discloses that the au-

thority to purchase supplies for the courthouse and jail was vested in the "courthouse and jail committee," of which the county judge was a member.

It results that the decree of the special chancellor and the court of civil appeals will be modified in the following particulars: The relator will be given a recovery for the item of water rent, amounting to $203.75, with interest from September 1, 1917. He will be denied a recovery for the balance alleged to be due on his jail account for keeping and feeding prisoners, amounting to $249.68. He will also be denied a recovery for the "bug killer" item.

The costs accruing in the court of civil appeals and in this court will be taxed one-half against the defendant, and the remaining half against the relator. The costs of the chancery court will stand as adjudged by the special chancellor.