E. N. DIETLER *v.* A. A. KINCANNON *et al.**

*(Nashville.* December Term, 1924.)

1. MANDAMUS. State board of education may be compelled to issue certificate on State comptroller for amount due for labor and materials furnished for improvements and repairs at State normal school.

Under Pub. Acts 1909, chapter 264, section 7, as amended by Pub. Acts. 1st Ex. Sess. 1913, chapter 6, section 1, and Pub. Acts 1917, chapter 51, section 4, State board of education has no discretion to refuse to pay valid claim against it, and may be compelled by mandamus to issue certificate on State comptroller for amount found due for labor and materials furnished in improvements and repairs at State normal school. (*Post, pp.* 659-665.)

Acts cited and construed: Acts 1909, ch. 264; Acts 1913, ch. 6.

Cases cited and approved: Akers and Union & American Publishing Co. v. Burch, Comptroller, 59 Tenn., 607; State ex rel. Joseph Uhl v. Gaines, Comptroller, 72 Tenn., 352.

Cases cited and distinguished: Farrelly v. Cole, 60 Kan., 356; Morley v. Power, 73 Tenn., 691; Lynn v. Polk, 76 Tenn., 257; Morgan v. Pickard, 86 Tenn., 208; Patton v. State ex rel., 117 Ind., 585; Flournoy v. City of Jefferson, 17 Ind., 169.

Code cited and construed: Sec. 1396a50(S.).

2. STATES. State board of education cannot invoke statute requiring dismissal of suits against State, or its officers, for State funds, in mandamus proceedings to compel issuance of certificate on comptroller for amount due for labor and materials furnished in repairs at State normal school.

Dietler v. Kincannon.

State board of education cannot invoke Shannon's Ann. Code, Section 4507, requiring dismissal of suits against State, or its officers, to reach State funds, in mandamus proceedings to compel it to draw certificate on State comptroller for amount found due for labor and materials furnished in improvements and repairs at State normal school. (*Post, pp.* 665, 666.)

Case cited and approved: Louisiana v. Jumel, 107 U. S., 711.

Cases cited and distinguished: Board of Liquidation v. McComb, 92 U. S., 541; Rolston v. Fund Commissioners of the State of Missouri, 120 U. S., 390.

Code cited and construed: Sec. 4507(S.).

3. MANDAMUS. Failure to approve lawful claim against State board of education not ground for demurrer to bill to compel certification to State comptroller.

That lawful claim for labor and materials furnished in improvements and repairs at State normal school was never approved for payment by proper authority, nor fixed in amount by statute or resolution, cannot be raised by demurrer to petition alleging amount of indebtedness, in mandamus proceedings to compel State board of education to certify amount found due to State comptroller; such act being purely ministerial when amount owed is legally established or admitted, as by demurrer to bill. (*Post, p.* 666.)

4. MANDAMUS. Allegations of bill for writ of mandamus taken as true on demurrer.

Allegations of bill for writ of mandamus must be taken as true on demurrer. (*Post, pp.* 667, 668.)

Case cited and approved: Louisiana v. Jumel, 107 U. S., 711.

*Headnotes 1. States, 36 Cyc., p. 865; 2. States, 36 Cyc., p. 918; 3. Mandamus, 26 Cyc., p. 464; 4. Mandamus, 26 Cyc., p. 466.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
Hon. I. H. Peres, Chancellor.

D. W. De Haven, for complainant.

Yandell Haun, for defendants.

Mr. Justice Hall delivered the opinion of the Court.

The original bill in this cause was filed by the complainant, E. N. Dietler, trustee in bankruptcy of the estate of Browne & Borum Company, a corporation engaged in the business of heating, wiring, and plumbing, against the defendants, constituting the State board of education, and the president of the West Tennessee State Normal School at Memphis, seeking to recover of them in their official capacities, and also in their individual capacity, an alleged indebtedness due Browne & Borum Company, as a balance on account for labor and materials furnished in improving and repairing the heating, lighting, and plumbing plant at the West Tennessee State Normal School.

The prayer of the bill sought a money decree against defendants for said alleged indebtedness.

Subsequently the prayer of the bill was amended so as to strike out that portion thereof which sought a money decree against defendants, and to ask for a mandatory injunction against defendants, requiring them to draw their certificate or voucher in favor of complainant on the State comptroller for the amount found to be justly due him; and by adding the following:

"That, if this court cannot legally pass upon and fix the amount justly due this complainant, said State board

of education be required by mandatory final injunction to audit and pass upon complainant's account and issue its certificate on the comptroller for the amount so found to be due complainant.''

Later the bill was further amended so as to add after the words ''mandatory final injunction'' in paragraphs 4 and 5 the words ''or mandamus.''

Defendants filed four separate demurrers to the bill as follows:

(1) By all the defendants in their official capacity.

In this demurrer it was averred that the members of the State board of education and A. A. Kincannon, president of the West Tennessee State Normal School, were officers of the State; that the suit was, in fact, one against the State; that the funds sought to be reached belonged to the State; and that the State had not consented to be sued, etc.

(2) By all the defendants as individuals.

In this demurrer a personal judgment against defendants, as individuals, was resisted on the ground that the bill showed on its face that credit for the alleged indebtedness was extended to the State board of education in its official capacity; that it was not shown that any credit was extended to any one or more of the memmers of said board, as individuals; that it was not shown that any personal liability had been assumed by any of them, or had been created by their nonfeasance, misfeasance or malfeasance in office.

(3) By eight former members of the State board, who demurred because the bill failed to show that they were still members of the board.

(4) By Austin Peay, as an individual, who demurred to the bill because it showed on its face that A. H. Roberts was Governor of the State at the time of .the creation of the alleged indebtedness, and did not show that defendant Peay had any connection with the board whatsoever at the time said alleged indebtedness was created.

The chancellor overruled the demurrer filed by defendants in their official and representative capacities, but sustained the other three.

Both complainant and defendant excepted to so much of the chancellor's decree as was adverse to them; but the defendants, members of the State board of education, and A. A. Kincannon, president of the West Tennessee State Normal School, in their official and representative capacities alone, have appealed to this court and assigned errors.

It is insisted by defendants that the chancellor erred in overruling their demurrer filed in their official and representative capacities. On the contrary, he should have held the suit to be one against officers of the State to reach and subject its funds, and should have dismissed the bill.

Complainant's bill alleges that the board of education is, and was, chargeable with the proper protection and preservation of all properties intrusted to its care, and it is, and was, the duty of the State board of education to conduct said institution (West Tennessee State Normal School at Memphis) in a proper way, and through its proper agents and officers to make contracts and keep in repair said West Tennessee State Normal School buildings at Memphis, and do such other things as be-

came necessary in the protection and preservation of all properties intrusted to the care of said board.

The bill alleges that said board is justly indebted to Browne & Borum Company in the sum of $5,401.74 (less a credit of $1,474.65) for goods, wares, and merchandise sold and delivered to defendants at their special instance and request, and for work and labor performed at said West Tennessee State Normal School; that each and every order for material and workmanship was duly authorized by those in charge of said institution, all of which was known to each member of the State board of education, or should have been known to them; that all of said orders were duly authorized by A. A. Kincannon, the president of said institution; that it was the duty of said Kincannon, and other members of the State board of education, to keep the buildings of said West Tennessee State Normal School in proper repair and in a sanitary condition; that all the repairs done by Browne & Borum Company were necessary, and the charges made therefor were fair and reasonable; that $1,474.65 was paid on said account; that the said A. A. Kincannon, and other members of the State board of education, have never denied owing, or the justness, of said account, but the only excuse which they have offered for not paying the same is that they did not have the funds in the treasury with which to pay said indebtedness.

By amendment to the bill it is averred that the board has to its credit, and subject to its certificates or orders, large sums of money, far in excess of the amount of complainant's account, out of which it can and should pay said indebtedness, but said board refuses to issue its certificate on the State comptroller for said indebtedness.

By chapter 264, Public Acts of 1909, the location, establishment, and maintenance of a State normal school in each of the grand divisions of the State was authorized and provided for. The State board of education was authorized to establish these schools and maintain them. The general management and control of these schools is intrusted to the State board of education by section 7 of said act.

It is further provided that the funds provided by said act, or any portion of the same, may be used for buildings and equipment. It is further provided that all disbursements under the provisions of said section 7 shall be made on the certificate of the president and secretary of the State board of education by the comptroller of the currency, in the manner prescribed by law, for the disbursement of money to charitable institutions. By chapter 6, Public Acts of 1913, 1st Ex. Sess. (Shannon's Annotated Code, section 1396a50), full authority is conferred upon the board to "purchase additional land and erect additional buildings . . . and to pay for the same out of moneys appropriated or may hereafter be appropriated for said schools." It is further provided by said act that said State board of education may be vested with the title to said property so purchased in as full a manner as property and buildings already acquired or donated to said State board of education, and for the same purposes. The legal right of the board to contract for buildings, repairs, and equipment is specifically recognized in section 4, chapter 51, Pub. Acts of 1917, where it is provided that—"All contracts for buildings and repairs and for equipment amounting to one

hundred ($100) dollars or more shall be let upon competitive bids.''

It thus appears that the State board of education is vested with the broadest powers and authority. The board is required to locate, build, maintain, and equip the State normal schools; it is authorized to purchase lands and take title thereto in its own name. It is authorized, indeed, it is made its duty to make and enter into all contracts necessary for the erection, maintenance, and operation of said schools, and to furnish all necessary supplies therefor; and it is made the duty of said board, through its president and secretary, to issue its certificate or certificates on the State comptrolled in payment therefor.

It is the contention of complainant in the instant cause that the court has jurisdiction and power to pass on and decree the amount justly due complainant—the defendants refusing to pay any amount—and to compel the board, through its proper officers, to issue its certificate on the State comptroller for the amount decreed to be due by the court.

We are of the opinion, after a careful examination of the authorities, that the chancellor properly overruled the demurrer of defendants, in so far as the bill is directed against them in their official and representative capacities. The State board of education is not vested with any discretion to refuse to pay a valid claim against it.

In *Farrelly* v. *Cole*, 60 Kan., 356, 56 P., 492, 44 L. R. A., 464, it was said:

''Discretion is defined, when applied to public functionaries, to be 'a power or right conferred upon them

by law, of acting officially in certain circumstances according to the dictates of their own judgment and conscience, uncontrolled by the judgment or conscience of others.' "

In 18 R. C. L., p. 192, section 116, it is stated that, as regards ministerial acts of the State comptroller, auditor, or treasurer not involving judgment or discretion, their performance may be enforced by mandamus as in case of other executive heads of State departments. Thus such officers may be compelled to perform the duty of drawing warrants on the State treasury, provided the right of the relator to the warrants is clearly made out; he may be compelled to audit or reject claims presented, to approve a contract awarded by a State board, or to permit the inspection of vouchers. On the other hand, such officers cannot be coerced as regards acts involving judgment or discretion. Thus when the officer has a discretion in the allowance or rejection of claims presented and exercises it, his determination cannot be controlled or reviewed on mandamus, though he may be required in the first instance to take initial action, as his determination as to whether the claim shall be allowed or rejected involves the judicial function.

In 18 R. C. L., p. 193, section 118, it is said: "It is very common practice for the legislature to establish State boards and intrust them with the performance of certain duties and functions, and the question has arisen in a number of cases as to the authority of the courts to control their action through the judicial process of mandamus. The proper rule in this connection is that, where such boards act in a *quasi*-judicial character, they cannot be controlled in the exercise of their legitimate

discretion by mandamus. So long as they act within the law and a reasonable discretion, they are subject to no control, save that of the legislature. . . . On the other hand, when the act sought to be enforced is purely ministerial, mandamus may issue to compel its performance as in case of other ministerial acts to be performed by public officers.''

In 26 Cyc., pp. 238, 239, it is said: ''Mandamus lies against a State controller to enforce duties wholly ministerial, and has been awarded to compel him to draw warrants for salaries of public officers, or for money due on a State contract, to direct the levy of a State tax to pay the public debt, or to allow the district attorney to inspect records in his office. But the writ will not lie where its effect would be to interfere with the controller in matters requiring the exercise of judgment and discretion on his part.''

''The secretary of State is very generally held not to be entitled to the immunity conceded by some of the cases to the Governor, and may be coerced to perform purely ministerial acts. This rule has been applied to such duties as filing papers, proceedings to audit claims, publishing notices of elections, entering or filing, or certifying nominations and questions upon which to vote, canvassing votes and issuing election certificates, or compiling and promulgating the election returns and tally lists forwarded to him by returning officers, as prescribed by law, affixing the great seal to the commission issued by the Governor to United States senators, signing the commission of a person appointed as sheriff, sealing and attesting a pardon, making publication of a proposed constitutional amendment, publishing the offi-

cial journal of the legislature, giving out public printing in pursuance of a contract of award,'' etc. 18 Cyc., pp. 231, 232.

Counsel for defendants nowhere in their brief cite any statute of the State conferring upon the State board of education a discretion as to the payment of its valid and honest debts, or authorizing it to issue or withhold its certificate on the comptroller as its whim might dictate, or authorizing it to pay less than reasonable value for goods and wares purchased by it, or for labor contracted by it.

It is insisted by defendants that the State board of education cannot be coerced, or its discretion controlled by the courts.

Complainant readily concedes this to be true with reference to any matter as to which it has a discretion or an exercise of judgment; but, as to all matters with reference to which the board is not given any discretion, and where the act to be done is purely ministerial, then such board or officer may be required to do it, or his duty.

In *Morley* v. *Power,* 5 Lea, 691, at page 698, the court said: ''It is next argued that the defendants have a discretion to determine whether a teacher is elected or has performed services, and to discharge a teacher; that defendants have, acting under this discretionary power, determined these points against petitioner; and that their discretion will not be controlled by mandamus.''

The court, in disposing of this contention, said: ''It does not exist when the act to be done is ministerial upon a given state of facts, although the officer or tribunal or body must judge, according to their best discretion, whether the facts exist, and whether they should perform

the act. For, otherwise, it is obvious, no mandamus would ever lie in any case. The right of petitioner to be reinstated as a teacher turns upon the fact that he was elected by a competent board of directors, entered into the contract required by law, and has been prevented by the defendants themselves from performing his duties as a teacher. . . . When, therefore, the defendants say that they have decided that petitioner was never elected, they simply mean that they have determined to act contrary to the fact and the law. . . . The putting a teacher in the possession of the school buildings, and the issuing to him a warrant for his compensation according to the contract, are purely ministerial acts. The directors must judge, according to their best discretion, of the existence of the facts and their duty to perform; but the discretion is not arbitrary, and is subject to revision by the court upon a mandamus.''

In *Lynn* v. *Polk*, 8 Lea, 257, it is said: ''But it [act of 1873] would certainly not be construed to· deprive the court of jurisdiction to compel a ministerial officer to perform a plain ministerial duty; and, when the demand of the relator is allowed by law, it is the plain ministerial duty of the comptroller to issue his warrant, even though in determining this question the court may have to declare a legislative act unconstitutional. Otherwise, the decision of the comptroller would be final, and the party having a demand allowed by law without remedy. Such proceedings, so far from being suits against the State, are in fact such in the name of the State to compel its officers to perform their duty. There are cases, however, where the ministerial officer is vested with discretion in the discharge of his duties—a discretion

which the courts cannot control. They may compel him to perform his duty, but may not determine how his discretion shall be exercised. The principle upon which mandamus is awarded against ministerial officers in such cases is not that the State is coerced, or its officers compelled to perform acts against the will of the State, but precisely the reverse; they are compelled to perform the will of the State as expressed in law—in general the only manner in which it can be expressed.''

In *Morgan* v. *Pickard,* 86 Tenn., 208, 9 S. W., 690, the court said: ''The comptroller must draw his warrant whenever the claim is a lawful one and authorized by statute. If he refuse, mandamus is the remedy.''

To the same effect is the holding of the court in *Akers and Union & American Publishing Co.* v. *Burch, Comptroller,* 12 Heisk., 607, and *State ex rel. Joseph Uhl* v. *Gaines, Comptroller,* 4 Lea, 352.

In the case last cited Uhl sought to compel Gaines, State comptroller, to issue his warrant for the amount claimed by the relator for services rendered by him as clerk of the circuit court of Shelby county in relation to the sale of land for taxes. The amount claimed was $1 for each tract sold. The comptroller insisted that the act which allowed this fee had been repealed. This court found against this insistence, but reduced the claim from $3,271 to $1,174. Thus, not only was Uhl's right to the fee and his right to have the warrant issued to him determined in the case, but also the amount due was ascertained and determined by the court.

In *Patton* v. *State ex rel.,* 117 Ind., 585, 19 N. E., 303, the relator sold and delivered a large quantity of coal to the State prison, on the orders of the warden. The

court found that it was the duty of the warden to purchase coal and pay for it by drawing a warrant, and said:

"The duty to draw the warrant for fuel sold and delivered to the warden for the use of the penitentiary is not a discretionary one, but, on the contrary, is an imperative duty. As the duty is imperative, its performance may be coerced by mandate."

In *Flournoy* v. *City of Jefferson*, 17 Ind., 169, 79 Am. Dec., 468, the court said: "And the act is none the less ministerial, because the person performing it may have to satisfy himself that the State of facts exists under which it is his right and duty to perform the act."

We are of the opinion that defendant cannot successfully invoke section 4507 of Shannon's Annotated Code. This section reads as follows:

"No court in the State of Tennessee shall have any power, jurisdiction, or authority to entertain any suit against the State, or against any officer of the State acting by authority of the State, with a view to reach the State, its treasury, funds, or property, and all such suits shall be dismissed as to the State or such officers, on motion, plea, or demurrer of the law officer of the State, or counsel employed for the State."

In *Board of Liquidation* v. *McComb*, 92 U. S., 541, 23 L. Ed., 623, it is said: "A State, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who

will sustain personal injury by such refusal may have a mandamus to compel its performance.''

In *Rolston* v. *Fund Commissioners of the State of Missouri,* 120 U. S., 390, 7 S. Ct., 599, 30 L. Ed., 721, it is said:

''It is next contended that this suit cannot be maintained because it is, in its effect, a suit against the State, which is prohibited by the Eleventh Amendment of the Constitution of the United States, and *Louisiana* v. *Jumel,* 107 U. S., 711, is cited in support of this position. But this case is entirely different from that. There the effort was to compel a State officer to do what a statute prohibited him from doing. Here the suit is to get a State officer to do what a statute requires of him. The litigation is with the officer, not the State. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. The trustees claim they have made this payment. The officer says they have not, and there is no controversy . . . if they have. The only inquiry is, therefore, as to the fact of a payment according to the requirements of the law. If it has been made, the trustees are entitled to their decree.''

It is urged by defendants that complainant's claim has never been authorized or allowed by law. They say a claim is allowed by law ''when it is approved for payment by the authority having the right to approve and certify it for payment, or where there is some fee or compensation fixed by statute or resolution.''

In *Morgan* v. *Pickard,* supra, this court said: ''The comptroller must draw his warrant whenever the claim is a lawful one and authorized by statute.''

Complainant's claim is certainly authorized by the acts hereinbefore referred to, and the true amount due him in certainly lawful under these acts. The cause is before the court on demurrer. Complainant's bill alleged that defendants are justly indebted to him in the sum of $4,501.74, less a credit of $1,474.65, and that they have refused to issue a certificate on the comptroller in settlement of said indebtedness. The allegations of the bill must be taken as true on the hearing on demurrer. Certainly the State board of education is vested with no legal discretion to pay or not to pay its just and honest debts. Admitting, as the demurrer does, the justness and correctness of complainant's demand, the issuance of such certificate is a mere ministerial act which may be required by mandamus. Were the correctness of complainant's claim denied by defendants, the court would then have jurisdiction and authority to pass upon it and adjudge the amount justly due. If the facts established that the sum alleged to be due, or any other sum, was justly due complainant, the board could not rightfully and legally determine that it owed complainant nothing. To do this would simply mean that it has determined to act contrary to the facts and the law. No discretion is conferred by law on the board to decide that it will pay nothing, when, in fact, it justly owes something. The act of issuing the certificate on the comptrolled, when the amount owed is admitted or legally established, is purely ministerial.

We have examined the authorities cited by defendants in their brief, and we are of the opinion that none of them are controlling.

The case of *Louisiana* v. *Jumel,* 107 U. S., 711, 2 S. Ct., 128, 27 L. Ed., 448, cited by defendants and relied on with much earnestness, is referred to and distinguished by the court in the case of *Rolston* v. *Fund Commissioners,* supra, where the court said:

"*Louisiana* v. *Jumel,* 107 U. S., 711, is cited in support of this position [that the suit against the board was a suit against the State], but this case is entirely different from that. There the effort was to compel a State officer to do what a statute prohibited him from doing. Here the suit is to get a State officer to do what a statute requires of him."

Practically all of the cases, if not all, cited by learned counsel in their brief, show that the act or thing sought to be compelled was forbidden by statute, or that the act or thing sought to be enjoined was required by statute.

It results that we find no error in the decree of the chancellor disallowing the demurrer, and it is affirmed.

The cause is remanded to the court below for further proceedings not inconsistent with this opinion.