STATE *ex rel.* BIGGS *v.* BARCLAY *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed December 11, 1948.

Rehearing denied January 27, 1949.

C. C. GEER, of Benton, for complainant.

LEWIS S. POPE, of Nashville, and CHAS. S. MAYFIELD, JR., of Cleveland, for defendants.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

This is an appeal from the decree of the Chancellor overruling a demurrer to the *mandamus* suit instituted by the sheriff of Polk County for the purpose of compelling the defendant Polk County Board of Commissioners to issue the county's warrant (1) of $16,194.90 for the board and keep of county prisoners and turnkey fees from March 1 to December 31, 1947, and (2) of $3,698.00 for transporting and guarding county prisoners from April 1 to December 31, 1947. Under the provisions of Chapter 367, Private Acts of 1947, county warrants of this character are issued by this board or its chairman, etc., rather than by the county court clerk and the county judge, as in most counties of the State.

The accounts upon which the suit is founded are made exhibits to and parts of the bill. The one for the board-

ing of prisoners identifies each prisoner, the offense for which he was held, the date received and released, the number of days and meals, the amount per day and number of turnkeys, and the total amount due for that particular prisoner. This account, prepared separately for each month, is signed and sworn to by the sheriff. The amount approved for each month is specifically stated in the certificate executed by each of the two circuit judges having jurisdiction and by the district attorney. Also, upon each of these accounts for boarding prisoners there appears over the signature of the county judge this recitation: "Approved: not audited". The total of these is the amount for which it is sought to compel the defendant board to issue the county warrant for boarding prisoners and turnkey fees.

This present bill was filed in April of 1948. It appears from its face that in September of 1947 the sheriff had instituted suit to obtain a judgment against the county for the keeping, feeding and transporting prisoners to September 1. The Chancellor sustained a plea in abatement interposed to that suit by the commissioners predicated upon the averment that the sheriff had not done all things required of him as a prerequisite to the collection of these two accounts. The accounts upon which the present suit is based were subsequently submitted to these commissioners certified and approved as hereinbefore stated.

There is included in the bill of complaint a letter to the sheriff from the chairman of the appellant board under date of March 18, 1948. This letter calls upon the sheriff to furnish the board certain information which it represents to be desirable for the completion of an audit of the accounts which the board says it is making. The

sheriff, evidently of the opinion that he was being trifled with by this board, requested the prompt return of these accounts delivered some days before, and plainly implied that he would institute suit. The board returned the accounts pursuant to an order entered in this cause some days after the institution of this suit.

By its several grounds of demurrer, renewed here by its various assignments of error, the Board insists that the sheriff's bill should be dismissed for each of three reasons. Considered in logical sequence, the first reason is that the bill on its face shows that the accounts upon which the suit is predicated have not been audited by the county judge, as required by law.

In the presentation of these accounts the sheriff complied with code section 12050 requiring him to submit itemized sworn statements of the amount due for the keeping and boarding of prisoners. These accounts have been inspected, examined and certified as to the amount due by the district attorney and the circuit judge as required by code section 12051. They were then presented to the county judge as directed by code section 12060. It is there provided that the county judge "shall audit the same and cause the clerk to issue a warrant for the amount allowed".

As heretofore stated, on each of these monthly accounts, as certified by the circuit judge and the district attorney, the county judge made this entry "approved: not audited". Because of this language, the Board insists that the sheriff is not entitled to a warrant for the feeding and keeping of these prisoners because, so the Board says, it is shown upon the face of these accounts that the county judge, through no fault of the sheriff, has failed to comply with a duty required of him.

The question just stated is very close. The record seems to reflect it as a fact that both the Board and its attorneys had considerable doubt as to its correct answer, as illustrated upon the part of the Board by the fact that in its letter of March 18 to the sheriff it did not decline to pay the account because not properly audited by the county judge, but said it would pay the same upon receipt of certain information, if satisfactory; and upon the part of the Board's attorneys by the fact that the original demurrer to the sheriff's *mandamus* bill did not seek to avoid *mandamus* on the ground that the county had not audited this account. This was done by amendment filed a number of days thereafter.

██ The solution to the question stated requires a construction of the apparently somewhat self contradictory language used by the county judge. This language indicates that the county judge perhaps placed a broader meaning upon the word "audit" than the controlling statute required. That official specifically states that he did "approve" as a claim against the county the accounts for boarding prisoners in the amounts stated as certified to by the circuit judges and the district attorney. Such approval necessarily implies a knowledge of the contents of that account. Otherwise, we would have to assume that the county judge was derelict in official duty. The rule is that a public official, in the absence of contrary proof, is presumed to do his duty. The county judge could not have acquired a knowledge of the contents of the accounts without examining them. Therefore, it follows that each of these monthly accounts for keeping and feeding prisoners shows upon its face by necessary implication that it was examined by the county judge and approved. There is left then the ques-

tion as to whether examination of the face of the accounts by the county judge and his approval thereof is insufficient to satisfy the requirement of code section 12060 that he "audit" the account.

The context of code section 12060 seems to indicate that the word "audit" is used in that section in the sense of the word "inspection". We reach this conclusion because the language of that code section is that the account shall be submitted to the county judge "for inspection, who shall audit the same". This seems to have been the construction placed thereon by this Court in *Reagan* v. *Fentress County*, 169 Tenn. 103, 111, 83 S. W. (2d) 244, 247, where it is said: "But statutes which impose upon the county judge the duty to audit the bills and which govern his action in the payment of costs in criminal prosecutions, prescribe the particular manner and occasion in which the duty shall be performed and do it with such certainty as to leave no room for the exercise of discretion. These statutes require him to act within very definite limitations. Whether or not a bill of cost or any item of a bill of cost in criminal prosecutions certified against the county for payment *is a legal charge is determinable by a mere reference to the statute and inspection of the bills certified.*" (Emphasis ours.)

Since the county judge necessarily inspected or examined the certified accounts presented to him in this case in approving the same, we conclude because of the wording of code section 12060 and upon the authority of *Reagan* v. *Fentress County, supra,* that the county judge did inspect or audit this account in the sense required by that code section.

As stated, the question just decided is very close, as a matter of law. The conclusion reached is strongly for-

tified by the very apparent fact that this conclusion is for the best interest of society. Here we have a sheriff charged with the very important duty of enforcing the criminal laws of this state. In the performance of that duty, so important to society, he is often required to imprison persons charged with the transgression of these laws. He must keep and feed these prisoners. In the payment of the substantial expense thereby incurred he must advance to the county, so to speak, from his own funds or credit. The method for reimbursement and compensation for supplies so furnished and services rendered is clearly provided by statute, and, in the interest of society, as well as in response to a normal sense of justice it is intended by our law that the sheriff shall be promptly reimbursed and paid for these supplies advanced and services rendered when he has complied with all the requirements of the statute, as the sheriff in this case has done. *Stovall* v. *Perry*, 134 Tenn. 707, 714, 185 S. W. 708. If violation of the letter and spirit of that intent is encouraged it will not only result in an injustice to the sheriff, but may likewise seriously impair the enforcement of criminal laws enacted for the protection of society.

The second ground of the demurrer is that chapter 367, Private Acts of 1947, vests in the appellant Board the authority and duty to audit these accounts and to issue in payment the county's warrants in such amount, if any, as it may decide is correct. In support of this insistence the appellant refers to sections 2 and 5 of the Private Act.

Section 2 of that private act vests in these commissioners authority to audit "all county offices". By section 5 of the commissioner of finance is responsible for

the auditing of the "records of all county officials". Based upon these provisions of that private act, it is insisted that the writ of *mandamus* cannot legally issue because the act to be compelled thereby (issuing the warrant) involves the exercise of an official discretion upon the part of the Board and its members, rather than the performance of ministerial duty.

Chapter 367 has been held to be a valid enactment. *Crewse* v. *Beeler*, 186 Tenn. 475, 212 S. W. (2d) 39. However, if the insistence just stated of the Board is well taken then those provisions of the act are unconstitutional, because they impose a special burden upon the Polk County sheriff not imposed upon such officials in the other counties of the State by the general law in the collection of such accounts. *Anderson* v. *Carter County*, 172 Tenn. 114, 110 S. W. (2d) 321. Under the general law sheriffs of the counties of Tennessee are entitled to be paid for the keeping and feeding of prisoners after their sworn to itemized accounts have been certified as correct by the district attorney and circuit judge as to the amount legally owed and due, and audited in the sense hereinabove referred to by the county judge. Code sections 12050, 12051, 12060. There is no apparent reason why the sheriff of Polk County alone should have imposed upon him the additional requirement of another audit by an additional set of public officials, and their additional agreement as to amount due prior to collection of an account which this Court has said should be promply paid because it "is both just and humane  . . . and it relieves sheriffs and jailors (men generally of small means) of the necessity of advancing money for the state or county, or of going in debt for supplies". *Stovall* v. *Perry*, *supra* [134 Tenn. 707, 185 S. W. 709].

We are of the opinion that the provisions of the Private Act relied upon do not refer to the payment for keeping and feeding prisoners, a matter in which the State, as well as the county, has a very material interest, to wit, the enforcement of its criminal laws, and that the payment of such an account is, therefore, regulated by the general law. In so placing this reasonable construction upon these sections of the private act, we are able to sustain the validity of those sections. This is in keeping with the well established rule of this Court that ''If two constructions of the statute be permissible, the court will adopt that construction which avoids constitutional conflict''. *State ex rel. Brown* v. *Grosch*, 177 Tenn. 619, 633, 152 S. W. (2d) 239, 245.

Finally, it is said that since Chapter 367 makes it a misdemeanor for a member of this board to issue a warrant which would exceed the budget as designed and prepared by it, the question of whether it would issue a particular warrant for the keep and board of persons held as prisoners incident to the enforcement in Polk County of the criminal laws of Tennessee is a matter requiring the exercise of discretion by these board members uncontrollable by *mandamus*. We find it unnecessary in this case to determine that insistence, since the letter of March 18 written to the sheriff by this board states that these accounts will be paid upon the furnishing to it by the sheriff of satisfactory evidence on the matters mentioned in that letter. It thereby admits adequate funds with which to pay the accounts.

The conclusion of this Court is that the duty of the Board of Commissioners of Polk County to issue the county's warrant in payment of the account of $16,194.90 to the sheriff for the boarding and keeping of the county

prisoners and turnkey fees is a ministerial duty which this Board was obligated to perform upon the presentation to it of that account by the sheriff certified and approved in the manner and to the extent that it was by the district attorney, the circuit judges and the county judge. *Dietler* v. *Kincannon*, 151 Tenn. 652, 270 S. W. 984. The decree of the Chancellor so holding is affirmed.

■ There is another reason, and it is independent of the one just stated, for determining that the Board was without authority to withhold this warrant for the feeding and keeping of prisoners. Its letter of March 18 stated in effect that it was delaying the issuing of this warrant pending its demanded receipt from the sheriff of certain records "showing admission and discharge of prisoners by dates and time of day". The date of receipt and discharge of each prisoner was specifically stated on the accounts furnished by the sheriff under oath and after certification by the district attorney and the circuit judge. No further record was required. The Board already had that information, and properly authenticated.

The probability is that in calling for this information the Board really had in mind that the time of day of the receipt and discharge of the prisoner determined whether or not the sheriff could charge for an entire day, if three meals were not furnished on day of receipt or discharge, and that the time of such receipt or discharge would establish that fact. The common law rule recognizes only full days, not fraction of days. However, by Chapter 61 of the Acts of 1917 code section 10713 was amended so as to provide that thereafter "three meals a day be furnished said prisoners and that no sheriff shall be allowed compensation for feeding prisoners unless after com-

mitment he actually feeds said prisoners". In our case of *State ex rel. Calloway* v. *Trotter*, 142 Tenn. 160, 218 S. W. 230, 232, it was held that "the peculiar language of the amendatory act (the 1917 Act) changed the general common-law rule, which recognized only full days and not fractions of days . . . " and that under the language of that act to collect for a full day the sheriff must furnish three meals. Perhaps the Board had the *Trotter Case* in mind in seeking to require the sheriff to furnish evidence as to the time of day each prisoner was received or discharged. If this be true, then the Board of Commissioners overlooked the fact that code section 10713, as amended by the 1917 Act, was further amended by Chapter 75 of the Acts of 1919 for the purpose of eliminating this requirement. So, code section 10713 was again amended by the 1919 Act as to restore the common law rule. That is the effect of that code section today. It was, therefore, of no concern to this Board as to what hour of day the sheriff received or discharged a prisoner. The Board could not withhold the issuance of a warrant, prompt issuance of which is contemplated by the law, pending receipt by it of information wholly irrelevant to the question of whether the warrant should be issued.

We are compelled to conclude, however, that the Chancellor was in error in overruling the demurrer in so far as that demurrer is directed towards the issuance of the warrant of $3,698 for transporting and guarding prisoners. As to that item the decree must be reversed. The county judge had not approved that account because, according to the allegations of the bill, he thought it was an act which did not require his approval. The county judge is mistaken in this conclusion. He is required to

approve that account. Code Sections 12220 and 12221. See also *Reagan* v. *Fentress County, supra,* 169 Tenn. 103, at page 110, 83 S. W. (2d) 244. In the absence of such approval, the Board cannot be compelled by *mandamus* to issue the warrant.

No doubt upon the remand of this case the Chancellor will upon application permit an amendment so as to make the county judge, if that be necessary, a party to this suit to the end that such further proceedings necessary to the collection of whatever may be owed on this account may be had.

The decree of the Chancellor as herein modified is affirmed and remanded for further proceedings in keeping herewith, with costs of the appeal adjudged against the Board of Commissioners for payment to be paid out of county funds of Polk County

All concur.