STATE *ex rel.* F. M. THOMPSON *v.* W. O. READ *et al.**

(*Knoxville.* September Term, 1925.)

1. **COUNTIES.** .Justices of county court, assembled in quarterly session, represent county, and are authorized to act for it.

 Justices of county court, assembled in quarterly session, represent county, and are authorized to act for it under Shannon Code, section 493. (*Post, pp.* 446, 447.)

2. **COUNTIES.** Justices of county court are charged with duties appertaining to and annexed by law to quarterly court.

 Justices of county court are charged with duties appertaining to and annexed by law to their assembled organization, commonly called quarterly court. (*Post, pp.* 446, 447.)

3. **COUNTIES.** Justices required to attend quarterly sessions unless excused for reasonable grounds.

 Justices of county court are required to attend quarterly sessions of county court, unless excused for reasonable grounds. (*Post, pp.* 446, 447.)

4. **COUNTIES.** County is corporate body represented by justices.

 County is corporate body, represented by justices, who occupy relation of directors, exercising powers regulated by law. (*Post, pp.* 446, 447.)

 Acts cited and construed: Pub. Acts 1915, ch. 11.

 Cases cited and approved: Crews et al. v. Witt, — Tenn., —; Pope v. Phifer, 50 Tenn., 690; State v. Anderson, 67 Tenn., 255; Grant v. Lindsay, 58 Tenn., 666.

 Code cited and construed: Secs. 493, 6001(S.).

5. **COUNTIES.** County acts in its municipal character through county court, composed of justices of the peace.

 Through the county court, composed of justices of the peace, assembled in quarterly session, the county in its municipal character

State ex rel. v. Read.

as a corporation acts and is acted upon, and in respect to many important matters of public concern it cannot act otherwise. (*Post, p.* 447.)

Cases cited and approved: Stewart v. Roberts, 9 Tenn., 389; Johnson v. Brice, 112 Tenn., 59.

6. **COUNTIES.** Legislature is powerless to supply substitute for county court possessing all powers exercisable by county court.

When justices of the peace refuse to assemble in quarterly session of county court, the legislature is without power to supply a substitute, having the powers that may be exercised by the county court. (*Post, pp.* 447, 448.)

7. **QUO WARRANTO.** State could bring either mandamus or ouster against justices refusing to attend quarterly session.

State could bring either mandamus or ouster proceedings, under Public Acts 1915, chapter 11, against justices of the county court refusing to attend quarterly session. (*Post, p.* 448.)

Acts cited and construed: Acts 1915, ch. 11.

8. **COUNTIES.** Illegal for justices of the peace to combine to prevent quorum of county court.

Irrespective of Shannon's Code, Section 6000, requiring justices of the peace to attend sessions of the county court, the very nature of the duties of the office obligates them to refrain from combining to prevent formation of quorum, within section 6001. (*Post, p.* 448.)

Code cited and construed: Sec. 6000(S.).

9. **COUNTIES.** Acts of other justices held immaterial issue in proceeding to oust justices refusing to attend county court.

In proceeding to oust justices of the peace refusing to attend county court sessions, whether acts of another justice were honest or dishonest, and whether he and others had combined in a faction, *held* immaterial. (*Post, pp.* 448, 449.)

10. **QUO WARRANTO.** Justices of peace held subject to ouster for their willful act in breaking quorum.

Justices of the peace, as justices of county court, *held* subject to ouster, under Public Acts 1915, chapter 11, for their willful act in obstructing business of county court by breaking quorum. within Shannon Code, section 6001. (*Post, pp.* 449, 450.)

Acts cited and construed: Pub. Acts 1915, ch. 11.

Code cited and construed: Sec. 6001(S.).

---

*Headnotes 1. Counties, 15 C. J., Section 92; 2. Counties, 15 C. J., Section 92; 3. Counties, 15 C. J., Section 108; 4. Counties, 15 C. J., Section 2; 5. Counties, 15 C. J., Section 102; 6. Counties, 15 C. J., Section 53; 7. Quo Warranto, 32 Cyc., p. 1417; 8. Counties, 15 C. J., Section 112; 9. Counties, 15 C. J., Section 99; 10. Quo Warranto, 32 Cyc., p. 1424.

---

FROM HAMBLEN.

---

Appeal from the Chancery Court of Hamblen County. —Hon. M. H. GAMBLE, Chancellor.

JOHN R. KING and RUFUS M. HICKEY, for appellants.

W. N. HICKEY and O. L. McMAHON, for respondents.

MR. JUSTICE COOK delivered the opinion of the Court.

This is a proceeding under chapter 11, Public Acts of 1915, to remove from office eight justices of the peace of Hamblen county for wilfully refusing to participate in sessions of the quarterly county court. The county court of Hamblen county is composed of eighteen justices of the peace, three-fifths of whom constitute a quorum for the transaction of business. Shannon's Code, section 6001.

In *John W. Crews et al. v. B. J. Witt,* Mss. Knoxville, the court held that after forty years of public recognition the act carried into this section of the Code must be recognized as valid.

Prior to the January term, 1925, the justices of the peace of Hamblen county fell into partisan controversy and separated into factions. Eight members of one faction, objecting to the conduct of the others, refused to attend court, and agreed to break a quorum. January 5, 1925, these eight members published a statement as follows: "The undersigned are magistrates of the county, duly elected from various districts, and desirous of representing their constituents and the interests of the county. We are, as magistrates, members of the county court. Having a deep sense of our responsibilities to the public, as well as the districts we represent, we have declined and shall continue to decline to attend the quarterly county court as it is proposed to be organized. Several among us have been advised that, if the court was organized as proposed that neither ourselves nor our constituents, the people in the district that we represent, and, through them, the people of the whole county, cannot get anything in court and will not be recognized as having a voice in the proceedings of the court.

"Such being the case, and impressed with the duty that we owe to the public, we will not be present at any meeting of the court nor take part in the proceedings so long as the court proposes to do what it is attempting to do.

"Economy in public affairs, the absence of factions in the county court, and a deep sense of responsibility should be in the heart and mind of every magistrate, and not the formation of cliques. So feeling, we believe that by

remaining away we can best serve the interest of the people of the county.

"It has come to our ears from numerous sources that J. E. Burke, a member of the court, has said, in substance, that we are not to have anything to do with the court in so far as anything we favor is concerned, and we, as taxpayers, magistrates, and citizens of the county refuse to be dictated to by him, and resent in our own behalf and in behalf of the people we represent any such claim on his part.

"The undersigned are members of both the Democratic and Republican parties. No politics enters into this, but our action is founded alone upon what we conceive to be the best interest of the people as a whole.

"This January 5th, 1925.

| | |
|---|---|
| "W. O. Read, | A. M. Felknor, |
| "Geo. W. Hale, | C. D. Williams, |
| "H. A. Lane, | Hal P. Read, |
| "J. E. Shaver, | J. L. McGhee." |

As a result of the action of these members, Hamblen county, as an arm or agency of the State, became static and ceased to function.

The justices of the county court, assembled in quarterly session, are the representatives of the county, and are authorized to act for it. Shannon's Code, section 493. They are charged with the duties appertaining to and annexed by law to their assembled organization, commonly called the quarterly court. *Pope* v. *Phifer,* 3 Heisk., 690. All the justices owe the duty of attending these sessions unless excused for reasonable grounds. The county is idealized as a corporate body, represented by the justices, who occupy the relation of

directors, exercising powers regulated by law. *State* v. *Anderson,* 8 Baxt., 255, *Grant* v. *Lindsay,* 11 Heisk., 666.

Through the county court thus constituted the county, in its municipal character as a corporation, acts and is acted upon. It cannot act otherwise than through the justices in respect to many important matters of public concern. *Stewart* v. *Roberts,* 1 Yerg., 389. The general scope of their duties is set forth in *Johnson* v. *Brice,* 112 Tenn., 59, 83 S. W., 791, and in the sections of the Code therein cited.

If the justices refuse to assemble in quarterly session, the county, as an arm of the State government, cannot function, for the legislature is without power to supply a substitute which possesses all the powers that may be exercised by the county court.

.Following the agreement above quoted and the act of these eight justices to break a quorum, petitions were filed to remove them from office for knowingly and wilfully neglecting their official duty. The causes were consolidated and heard together. The defense was that the respondents acted in good faith for the public good in order to prevent a partisan and corrupt majority from controlling the affairs of Hamblen county. The trial judge in effect held that the direct inquiry was whether or not respondents deliberately broke a quorum and thus rendered this branch of the government inoperative; and that it was not permissible to intrude a collateral issue, and under it search the mind of the opposing justices to measure the motive of each faction. The petitions were sustained, and the respondents were

all removed from office. All of them appealed except A. M. Felknor.

Counsel for the appellants reduce the assignments of error to four propositions. No elaborate discussion of them is required.

(1) As to the proposition that the remedy of the State was through writ of mandamus to compel attendance of these officers upon sessions of the county court, it is sufficient to say that the State could elect its remedy, and, if an ouster proceeding under chapter 11, Acts of 1915, was available, the State could use it.

(2) As to the insistence that section 6000, Shannon's Code, requiring justices to attend the sessions of the Court is unconstitutional, the very nature of the duties which the justices of the peace voluntarily assumed upon entering office made it obligatory upon them to refrain from combining in a faction with the declared purpose of obstructing the business of the county. The county court is a deliberate body, open to free, fair discussion of public questions, and to the conclusion to which discussion leads. No statute is required to impose the duty to refrain from deliberately obstructing the functioning of the court according to the spirit of our institutions and the laws which regulate the action of the court.

(3) Whether J. E. Burke, against whom their acts were primarily directed, was honest or dishonest, or whether he and other members of the court combined in a faction to overcome the other faction, is not open to inquiry here. The entry upon it would intrude an inquiry into the motives which actuated both factions.

The inquiry under the issue made is whether or not the appellants wilfully neglected or wilfully refused to perform a public duty. To go beyond this and inject into the inquiry the motives that induced the factionalism in the county court would carry us far afield, and leave the result to be determined by the professions and protestations of both sides.

The appellants are subject to ouster for their wilful act in obstructing the business of the court by breaking a quorum. Burke and his associates are likewise subject to the law, and could not go far astray without subjecting themselves to a similar proceeding. It was not error to exclude the collateral inquiry.

"The justices of the peace assembled in the county court represent the county itself as a body corporate, and are empowered to levy taxes, to appropriate money from the county treasury, and generally to do and perform, under all constitutional restrictions of course, whatever in their judgment as a body may be best for the community forming the body corporate represented by them. That is they may be regarded as a legislature of and for the county, authorized to enact laws for the local government of their constituents in the affairs of the body politic called the county.

"The duties of justices of the peace as members of the local representative body, are, under our rapid advancement in wealth and our wonderful progress in civilization, daily growing in importance, and the correct, efficient, wise and conservative exercise of their legislative functions, is not less important to the people, than the faithful performance by them of their duties as judges in the domestic tribunals in which they pre-

152 Tenn.—29.

side, as the nearest offices to the people in the administration of justice, and the maintenance of social order."

Under the law and facts the removal of appellants from office for wilful refusal to discharge an official duty was justified; and the decree of the chancellor is affirmed.