CROCKETT COUNTY *et al. v.* WALTERS, COMMISSIONER, *et al.*

(*Nashville,* December Term, 1935.)

Opinion filed June 13, 1936.

338

Holmes & Holmes, of Trenton, for Highway Commissioners of Crockett County.

Craig, Durham & Carney, of Ripley, John R. Aust, of Nashville, and J. B. Avery and S. Homer Tatum, both of Alamo, for Crockett County.

Roy H. Beeler, Attorney-General, and Edwin F. Hunt, Assistant Attorney-General, for Commissioner Walters.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought under the Declaratory Judgments Act (Code 1932, sec. 8835 *et seq.*) by Crockett county, a committee appointed by the quarterly county court of that county to bring suit, and by certain citizens and taxpayers of the county on behalf of themselves and for the county. The bill named as defendants the commissioner of highways, the comptroller, and the attorney-general of the state, the county judge, the county trustee, the highway commissioners of Crockett county, and others not necessary to be enumerated.

It was alleged that the quarterly county court had passed a resolution directing that Crockett county's *pro rata* of the gasoline tax fund be expended by the state highway department on the highways of Crockett county under chapter 45 of the Pub. Acts 1931; that the coun-

ty judge and other county officials denied the authority of said resolution, taking the position that chapter 45 of Pub. Acts 1931 was repealed by implication as to Crockett county by chapter 26 of the Private Acts of 1933 creating a highway commission for Crockett county, and that, under the provisions of the private act, the county authorities alone had the right to expend this fund.

The cause was brought to issue, proof taken, and on the hearing there was a decree for the complainants, from which the defendants have appealed. The bill sought a declaration upon several matters of controversy which appear to have been lost sight of, but the complainants took no exception to the chancellor's decree. The complainants not appealing nor assigning errors, we confine our consideration to the matters upon which the chancellor passed.

His honor ruled that the suit was maintainable by the parties bringing it; that chapter 26 of the Private Acts of 1933 was unconstitutional; that the quarterly county court of Crockett county by proper resolution directed the turning over of this county aid fund, pursuant to the provisions of chapter 45 of the Pub. Acts of 1931, to the state highway department to be expended on the county roads and bridges of said county; that the defendants county judge and county highway commissioners refused to obey said resolution; and the decree enjoined the county officers from expending any of the gasoline tax or county aid fund, and declared it the duty of those officials "to turn the same over to the State Highway Department, under the resolution of the county court, to be used and expended by the State Highway

Department as provided by chapter 45 of the Public Acts of 1931.''

 The defendants' first contention is that complainants have no right to bring this suit. We do not find merit in this. There was a *bona fide* controversy between the county, as represented by the quarterly county court, and the defendant officials as to the constitutionality and effect of chapter 26 of the Private Acts of 1933; the controversy was real; and the parties had a real interest in the determination of the question. No more is necessary to make a case cognizable under the declaratory judgments statute. *Miller* v. *Miller*, 149 Tenn., 463, 261 S. W., 965. Likewise there were similar justiciable differences between individual complainants and the defendant officials, asserting the validity of chapter 26 of the Priv. Acts of 1933 as a whole, with reference to burdens imposed upon the individuals by that act. Some parties named both as complainants and defendants appear to be unnecessary, but there are real parties on either side and real controversies between them.

The validity of the resolution or resolutions of the quarterly county court in authorizing this suit is not directly assailed in this court. The proposition submitted by defendants' counsel in the language of their brief is:

''If that resolution is to be construed and interpreted as authorizing the bringing of this suit, then the Quarterly County Court was exceeding its authority and power, and acting illegally. The purpose of this suit, as expressed at great length in the bill, is not to turn the Gas Tax Fund of the County over to the State Highway Department to be expended as provided in chapter 45, Acts of 1931 (Code, sec. 3291 (1-2-3)). . . . But the pur-

pose of the suit, as set out, in many words, in the bill, was, and is, to turn the control and management of the expenditures of the County's road fund over to an arm or agency of the Federal Government. Such a course was not in contemplation when Code, sec. 3291 (3) was enacted. . . . So we insist that the Quarterly County Court of Crockett County was without lawful power to authorize the prosecution of a suit, the purpose of which was to surrender the power of local self government and determination to an agency of the Government of the United States."

In respect to this, it may be observed that the chancellor sustained the suit only to the extent of declaring it to be the duty of defendant officials to turn the gasoline tax fund "over to the State Highway Department, under the resolution of the county court, to be used and expended by the State Highway Department as provided by chapter 45 of the Public Acts of 1931." Hereafter, if there is a diversion or misappropriation of this fund by the state highway department or others, such action may be challenged. No such question is before us on this appeal from the chancellor's decree.

The bill, as before mentioned, attacks chapter 26 of the Private Acts of 1933 as unconstitutional, and the chancellor so held. We consider this attack later. Both defendants and complainants, the latter if the act of 1933 be treated as constitutional, seem to agree that this act repealed by implication chapter 45 of the Pub. Acts of 1931 as to Crockett county. We are not, however, able to reach this conclusion.

No rule of statutory construction is more firmly established than that repeals by implication are not favored. This court has said that nothing short of an ir-

reconcilable conflict between two statutes, by implication, works a repeal of the former by the latter. *Stonega Coke, etc., Co.,* v. *Southern Steel Co.,* 123 Tenn., 428, 131 S. W., 988, 31 L. R. A. (N. S.), 278.

Chapter 45 of the Pub. Acts of 1931, after providing the manner of distribution of the proceeds of the state gasoline tax among the various counties "to be used by the county highway authorities in the building, repairing and improvement of county roads and bridges," enacts "that the Quarterly County Court of any county of the State may, at any regular term by resolution passed by a majority of the Justices present and spread upon the minutes of the Court, direct the State Highway Department to expend said counties *pro rata* of said fund on such county highways and bridges as the county highway department of said county by resolution may direct, and in such counties as have no highway department then the County Judge or Chairman may so direct." Section 3.

The provisions of chapter 26 of the Private Acts of 1933, thought to be in such irreconcilable conflict with the act of 1931 as to work a repeal by implication, are thus summarized in defendants' brief:

"Section 1: Provides for the creation of a Department of County Roads.

"Section 2: Provides for a Road Commission of three members, to be elected by the qualified voters of the County.

"Section 9: Provides—'That the County Road Commission aforesaid is hereby given general power, control and authority over all County Roads, bridges and culverts in said County and for their construction and repair, said County Road Commission shall have exclusive

power and authority to make expenditures of County Road Funds or Road Money.'

"Section 17: Provides 'That any and all monies, taxes, privileges, fines, forfeitures, fees and other revenue of every kind belonging to the County Road Fund of said counties, including any and all monies, and revenue received from the State, from a gasoline tax or other tax, and commutation money shall be paid into the hands of the County Trustee of said counties and by him placed to the credit of the County Road Account. . . . And shall only be drawn out of said account upon a road warrant properly signed by the Chairman of the County Court or County Judge of said County. And all expenditures authorized and to be paid under this Act shall be made and paid by a road warrant drawn on and against and payable solely out of the road funds of said County and shall so show upon the face of the road warrant, and directed to the County Trustee of said County.' "

We are unable to follow the argument. We think the two acts must be construed *in pari materia* (*City of Nashville* v. *Dad's Auto Accessories,* 154 Tenn., 194, 285 S. W., 52; *Faulkner* v. *Nashville,* 154 Tenn., 145, 285 S. W., 39; *Howard & Herrin* v. *Nashville, C. & St. L. Ry. Co.,* 153 Tenn., 649, 284 S. W., 894, 46 A. L. R., 1530), and with other county road acts.

When chapter 45 of the Pub. Acts of 1931 was enacted, road commissions created by private acts existed in a large proportion of the counties of the state. The powers conferred upon such county commissions by the various acts were substantially as broad as the powers conferred upon the Crockett county commission by chapter 26 of the Priv. Acts of 1933. The act of 1931 contemplated

that these county commissions would handle the county aid funds derived from the gasoline tax in every county, unless the quarterly county court of a particular county directed that such funds be expended by the state highway department. We see nothing in the act of 1933 in derogation of the power of the quarterly county court of Crockett county to turn over the funds to the state highway department just as the quarterly county court in any other county might do under the act of 1931. Nothing in the act of 1933 limits the power of the quarterly county court of Crockett county in this respect. That body is still the Legislature, the board of directors, as sometimes termed, the governing body of Crockett county. The highway commissioners of Crockett county had control over the gas tax fund and other road funds until the quarterly county court acted, but, when the quarterly county court of Crockett county exercised the authority conferred upon all quarterly county courts by the act of 1931, the expenditure of the gas tax fund allotted to that county was thereby intrusted to the state highway department. The only authority over the fund then remaining in the county highway commission was to select the county highways and bridges upon which such fund should be expended by the state highway department. And, in reply to a suggestion of defendant officials, the act of 1931 did not contemplate that the county highway department should designate the particular highways and bridges prior to the action of the quarterly county court.

"The legislature are presumed to know existing statutes and the state of the law relating to subjects with which they deal. Hence (it is presumed) that they would expressly abrogate any prior statutes which are intended

to be repealed by a new legislation. Where there.is no express repeal, none is deemed to be intended, unless there is such an inconsistency as precludes this assumption; then it yields only to the extent of the conflict. Regard must be had to all parts of a statute, and to other current legislation *in pari materia,* and the whole should, if possible, be made to harmonize; and if the sense be doubtful, such construction should be given, if it can be, as will not conflict with the general principles of law, which it may be assumed the legislature would not intend to disregard or change." Lewis' Sutherland, Statutory Construction (2 Ed.), sec. 447.

In this connection it is to be noted that section 15 of the Priv. Acts of 1933 provided that no power should thereafter exist with the quarterly county court to exempt road hands in case of those unable to perform manual labor, but such power was conferred on the quarterly county court and the county road commission acting jointly. We are satisfied that, if it had been the intent of the Legislature to deprive the quarterly county court of power to turn over the gas tax fund to the state highway department, they would have dealt with the matter as they dealt with the power of that court to exempt road hands from performing manual labor. See Code, sec. 4820.

We pass to the assault made by the complainants upon the validity of chapter 26 of the Private Acts of 1933. The control of the roads of a particular county is usually regarded an appropriate subject for local legislation, and special road laws for particular counties have been quite generally sustained. *Condon* v. *Maloney,* 108 Tenn., 82, 65 S. W., 871; *Archibald* v. *Clark,* 112 Tenn., 532, 82 S. W., 310; *Galoway* v. *State,* 139 Tenn.,

484, 202 S. W., 76, L. R. A., 1918D, 970; *Williams* v. *State,* 155 Tenn., 364, 293 S. W., 757.

The caption of chapter 26 of the Priv. Acts of 1933 is "An Act to provide for the laying out and working of the public roads in counties of this State having a population of not less than 17,355 nor more than 17,365, by the Federal Census of 1930 or any subsequent Federal Census; to provide ways and means therefor; and to provide penalties for the violation of this Act." We find nothing in the act that does not fall within this caption as "ways and means" of rendering the act effective. We think the act was not framed in violation of section 17 of article 2 of the Constitution.

The next objection is that section 10 of the act which authorizes the highway commissioners to exercise the right of eminent domain makes no adequate provision for compensation to the landholder, and therefore violates section 21 of article 1 of the Constitution. The section (10) provides:

"Such condemnation suits shall be filed in the name of the County but no bond shall be required of the County. All judgments, rendered, shall be against the County and such judgments, costs, expenses and fees incurred in any such condemnation suits shall be paid out of the County Road Funds of the County by road warrant, drawn as hereinafter provided for. Procedure in said condemnation suits shall be as provided for under the general laws of this State."

In *Wright* v. *Donaldson,* 144 Tenn., 255, 230 S. W., 605, 606, a road law for Lake county was held bad because the landowners' only recourse was a direction in the act that the road commissioners "appropriate an amount of road funds sufficient to pay such damages," and be-

cause, said the court, "the act under consideration does not authorize the taking of a judgment against the county for the damages in such cases."

As above seen, the act before us does authorize a judgment against the county. The provision is similar to the provision of the act considered in *State Highway Department* v. *Mitchell's Heirs,* 142 Tenn., 58, 216 S. W., 336, 339, except, under the former act, the judgment was to be paid out of the general fund of the county. It was recognized by the court that the general fund of the county might be inadequate, but it was said:

"If the general fund of the county should prove insufficient, the landowner, having a judgment against the county, may resort to sections 681-684 of Thompson's Shannon's Code [sections 1077-1080, Code of 1932], which direct the county court to impose a tax to pay any judgment against such county and which award to the person owning the judgment the right to a *mandamus* to compel the levy of a sufficient tax for his satisfaction." *State Highway Department* v. *Mitchell's Heirs, supra.*

The same remedy is open to the landowner with a judgment under this statute, if the county road fund should prove inadequate. Under this act, the road fund is designated as the primary fund out of which such a judgment is to be satisfied. The act, however, does not mean that the judgment cannot be satisfied otherwise if the road fund proves insufficient.

It is further urged that the act of 1933 is bad by reason of provisions of sections 12 and 13 regulating the road duty of citizens of Crockett county. Under these sections, all male inhabitants of the county between the ages of 21 and 50 years are classed as road hands; unless exempted, they are required to work on the roads

3 days each year; and it is provided that any road hand may commute by paying $3 to the county trustee, and that any road hand failing to work or commute is guilty of a misdemeanor, and shall be fined not less than $5 nor more than $50.

The Code provides that all male inhabitants over 18 and under 45 years of age, except those exempted, shall work on the roads, section 2773; that the county court shall fix the number of days to be worked by road hands, not less than 4 nor more than 8 days each year, section 2765; that any road hand may commute by paying a dollar and a half per day, section 2774; and that any road hand willfully failing to work or commute shall be guilty of a misdemeanor "and liable to . . . punishment as in other misdemeanors," section 2795.

Obviously, these provisions of sections 12 and 13 primarily affect the citizens of the county as individuals rather than Crockett County itself, and no reasons occur why these distinctions should be made between citizens of Crockett county and the citizens of other counties. Such provisions are, however, nonessential, plainly severable and may be elided from the act and arbitrary discrimination thus be avoided. Corresponding Code provisions will then prevail.

 There is some criticism of sections 14 and 15 of the act which take away from the quarterly county court, as before noted, the power to exempt road hands unable to perform manual labor and confer that power jointly upon the quarterly county court and the county road commission. We see nothing objectionable about this. Many functions formerly and ordinarily exercised by the county court may be taken away from that body and intrusted

to other county authorities. This is fully discussed in *Prescott* v. *Duncan,* 126 Tenn., 106, 148 S. W., 229.

Modified as herein indicated, the declaration of the chancellor is confirmed, with costs of the cause divided.