CREWSE *et al. v.* BEELER, ATTORNEY GENERAL, *et al.*

(*Knoxville,* Special May Term, 1948.)

Opinion filed May 3, 1948.

Rehearing denied June 12, 1948.

480

CHARLES S. MAYFIELD, JR., of Cleveland, R. A. DAVIS, of Athens, and C. C. GEER, of Benton, for appellants.

LEWIS S. POPE, of Nashville, for Board of Com'rs.

JOHN C. PRINCE, of Benton, for Polk County.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The two questions for determination are whether Chapters 367 and 671, respectively, Private Acts of 1947 are valid enactments. These acts are applicable only to Polk County. The Chancellor adjudged each to be constitutional in all particulars. Complainants below by appropriate assignments of error in support of their appeal insist that each act is unconstitutional for any one of several reasons stated.

Chapter 367 is voluminous. It purports to create a three member board of County Commissioners and to transfer from the Quarterly County Court to this Board the administration of all governmental affairs of Polk County, except those duties and rights conferred upon the Quarterly Courts by the constitution. Its provisions are very similar to just such an act applicable to Shelby County and upheld by this Court in the lengthy and well considered opinion of *Prescott* v. *Duncan*, 126 Tenn. 106, 148 S. W. 229; and very similar also to such an act applicable to Knox County and upheld by this Court in 1937 in *Troutman* v. *Crippen*, 186 Tenn. 459, 212 S. W. (2d) 39.

Appellants say that Chapter 367 violates the one purpose clause, Article 2, Section 17, of the constitution in that it seeks "to accomplish a multitude of objects, changing entirely the administrative" etc., affairs of

Polk County. The governing principle applicable here is restated in *Walmsley* v. *Franklin County*, 133 Tenn. 579, 582, 182 S. W. 599, 600, as follows: "When a statute has but one general object or purpose, the subject is single, however multitudinous may be the means or instrumentalities provided for effecting that purpose."

The one purpose of Chapter 367 is to transfer the administration, as that word is used in its broadest sense, of the affairs of Polk County from the Quarterly County Court to this Commission, excepting only the powers given to the Quarterly Court by the constitution. The accomplishment of such single purpose necessarily requires that the act deal with a multitude of administrative details. That, however, is not inconsistent with the purposes being single. *Prescott* v. *Duncan* and *Troutman* v. *Crippen, supra*, seem to have foreclosed this question contrary to the insistence of these appellants.

The caption of the act involved in the *Troutman Case* is almost identical with the caption of Chapter 367. Eliminating unnecessary words, the language of the caption of the act upheld in the *Troutman Case* is:

"An Act to centralize, consolidate and reorganize county administrative affairs in (Knox County) . . . to create a Board of County Commissioners . . . ; to prescribe their duties . . . ; to anticipate revenues and borrow money . . . ; to authorize the employment by said Board of all subordinate officials . . . ; to divest the County Court of certain administrative and appointive powers and vest the same in the Board of County Commissioners and the departments created thereunder; to abolish certain offices and agencies (naming them) . . . and the transfer of certain of their powers, duties and functions as therein defined to the Board of County Commissioners . . . and to repeal

all laws, and parts of laws in conflict with this Act." Priv. Acts 1937, ch. 183.

██ ██ Appellants say, however, that the body of this act goes beyond the caption, and vests the Board with legislative powers, in that it requires the Board to prepare an annual budget itemizing all county expenses and makes it mandatory upon the Quarterly Court to levy a tax sufficient to meet the financial requirements of that budget. It is insisted that such a requirement illegally deprives the Quarterly Court of its discretionary legislative powers in levying taxes, and further that this is not stated in the caption. The same argument was made and rejected in *Prescott* v. *Duncan* and *Troutman* v. *Crippen*. The Court in the *Prescott Case* quoting *State ex rel.* v. *Powers*, 124 Tenn. 553, 137 S. W. 1110, said [126 Tenn. 106, 148 S. W. 237]:

"We are furnished with no authority for the proposition that it is beyond the power of the legislature to delegate the taxing power to a proper county agency other than the quarterly court, and we would be slow to reach such a conclusion."

In the *Troutman Case* this Court in responding to the same insistence said:

"This contention is predicated upon the recital in the caption 'to centralize, consolidate and reorganize County *administrative* affairs". (Italics ours.) In law the word 'administration' is thus defined in Webster's New International Dictionary; 'In its broadest sense, the activity of the state in the exercise of its political powers, including the action of the legislative, judicial, and executive departments.' It was in this sense that the term 'administrative affairs' was used in the caption of the act."

The Court then held:

"Upon the assumption therefore that the Legislature intended to confer upon the board the power to levy taxes, we think the caption is broad enough, under the authorities cited, to cover that subject."

We necessarily conclude that Chapter 367 does not violate our constitution in this respect.

It is also contended that Chapter 367 contravenes our constitution in that it suspends the general law by divesting the Quarterly Court of those powers given to the Quarterly Courts of all other counties (with exception of Shelby and, perhaps, a few others) by Code Section 10225 through 10268, and is class legislation. This insistence must be rejected under the authority of *Troutman* v. *Crippen,* where the Court in disposing of the same contention said:

"This contention, as we understand counsel, is based upon the idea that in all other counties of the state, with the exception of Shelby County, the local affairs are administered by the county court, thus depriving the citizens of Knox County of the form of government prevailing in other counties. This identical situation was represented in *Prescott* v. *Duncan, supra,* where the same duties were transferred to a board of commissioners, with a few minor additions. The law was not changed by the 1937 act, and is the same as that in effect in the other counties. The status of the citizenry of Knox County is not affected by the statute. The only change is with respect to the instrumentality selected to administer the law. The constitution contains no restraint upon such legislative action, as was declared in *Prescott* v. *Duncan.*"

In *Prescott* v. *Duncan, supra,* it was held "that the Legislature may take from the county court all power not conferred upon it by the Constitution expressly or by

necessary implication'' (126 Tenn. at page 129, 130, 148 S. W. at page 234) and that "whether the Quarterly County Court in respect of the matters contained in the act in question shall remain the agency of local government is a matter for the exclusive determination of the Legislature'' (126 Tenn. at page 134, 148 S. W. at page 236.) The Court points out that the constitutional duties and powers of the Quarterly Court are limited to the election of a ranger, a coroner and the right to fill county offices created by the Legislature and that "all its other duties and powers have been imposed by the Legislature and may be taken away by it''. (126 Tenn. at page 141, 148 S. W. at page 237.)

■ With reference to the insistence that Chapter 367 contravenes Code Sections 10225 through 10268 vesting the duties therein specified to the Quarterly Courts of the State, it is to be observed, first, that Chapter 367 primarily affects Polk County in its governmental capacity and, second, that the Code Sections referred to, and being the general law, do not prohibit the transfer of the powers therein stated to some agency of the county other than the Quarterly Court. It is, of course, elementary that the Legislature may constitutionally enact a special act affecting a particular county in its governmental capacity, provided such special act is not contrary to a general law mandatorily applicable to all other counties. In the latter event there must be some good and valid reason for the special classification. *Town of McMinnville v. Curtis*, 183 Tenn. 442, 448, 449, 192 S. W. (2d) 998. We conclude that Chapter 367 does not violate any of the provisions of the constitution in this respect.

■ The final insistence is that Chapter 367, violates Section 17 of Article 11 of our Constitution providing that "no county office created by the Legislature shall

be filled otherwise than by the people or the county court." This insistence is predicated upon that provision in Section 1 of Chapter 367 which provides that any vacancy occurring in the board "shall be filled by the remaining Commissioners . . . to serve during the unexpired term". Here again we find the question settled by *Prescott* v. *Duncan*. The act in that case contains the same provision, and the same insistence was urged upon the Court. It was held that Section 17 of Article 11 did not apply for the reason that the article referred to "vacancies which occur immediately upon the creation of the county office". In the instant case certain individuals were named in the act to serve until the next election, as in *Prescott* v. *Duncan*. So the Court held that the constitutional provision with reference to filling a vacancy was not one which existed upon the creation of the office and, therefore, came within Section 4 of Article 7 which provides that the filling of vacancies when not otherwise directed by the constitution "shall be made in such manner as the Legislature shall direct." This insistence must, therefore, be overruled.

Our holding hereinabove stated disposes either expressly or by necessary inclusion therein of every attack made upon Chapter 367 by either Polk County or its taxpaying complainants or officials and results in our upholding of this act as a valid enactment.

Attention is now directed to the insistence of these same appellants that Chapter 671 of the Private Acts of 1947 is unconstitutional. That act authorizes the county commission created by Chapter 367 above discussed to issue and sell $520,000.00 of county bonds, and provides that $200,-000.00 thereof shall be applied "to the cost of constructing a school building in Copper Hill, Tennessee" and a like amount "to the cost of constructing a school building in

Benton, Tennessee''. The act further provides that $100,000.00 of the proceeds of the sale of these bonds shall be ''used for the repair, reconstruction, rebuilding, equipping and reequipping of the school buildings to be constructed and already constructed''.

The act directs that the remaining $20,000.00 of the proceeds of the bonds be applied ''to the cost of constructing a Courthouse in Ducktown''.

The Board is empowered to issue and sell the bonds ''without submitting the same to referendum of the people''. It is directed that the proceeds from the sale be delivered to the county trustee ''who shall place the same in a separate fund and said money shall be paid out by him only upon the warrants of the County Commission . . . for the purposes set out'' above.

Section 7 of the act provides that none of the funds for the schools shall be expended until the Polk County Board of Education submits to the commission, as it is required by the act to do, ''plans and specifications of the school buildings to be constructed''. The Board of Education is authorized to employ architects and engineers to assist in this work, and that expense shall be considered a part of the cost of building. The Board of Commissioners are required to receive bids and let the contract for the construction of the buildings in accordance with the plans and specifications submitted by the Board of Education, and to oversee the performance of the work. The funds that are to be used for repairs, rebuilding and equipping of school buildings already built or to be built are to be expended by the County Commission in accordance with the plans and specifications submitted by the County Board of Education.

While it is insisted that the act violates Article 2, Section 17 of the Constitution (the one subject clause) it

is perhaps more logical in this case to consider first the insistence that the act violates Article 11, Section 8, in that it permits the issuance of these bonds without the assent of a majority of the votes cast in an election held for that purpose as required by the general law applicable to all other counties by Code Section 10248.

Code Section 10248 is not applicable to bonds issued for the building and repairs and equipment of school buildings. This was last pointed out by this Court in *Southern* v. *Beeler, Atty. Gen.*, 183 Tenn. 272, 283, 284, 195 S. W. (2d) 857. It is pointed out in that case that bonds for the erection, repairs, etc., of school buildings are authorized by the general law carried in Code Sections 2557-2569 whereby the Quarterly Court is authorized to issue bonds for school purposes without first submitting the matter to a vote of the people. It necessarily results that Chapter 671 does not violate the constitution in so far as it authorizes the issuance of $500,000.00 of these bonds for school purposes without first receiving the assent of the voters in an election held for that purpose.

The issuance of bonds for the erection of a courthouse is, of course, not authorized by Code Sections 2557-2569, since those code sections are restricted to the issuance of bonds for school purposes.

The building of a courthouse is a public purpose. Bonds issued to defray the cost of building such courthouse are bonds issued for a public purpose. Applicable, therefore, is the general law carried in Code Section 10248 reading thus:

"Any bonds authorized to be issued by any of the counties, upon the faith and credit of such county, for public purposes, shall only be upon an election to be first held by the qualified voters of such county and the

assent of a majority of the votes cast in said election; provided, that nothing in this statute shall be construed as applicable to renewal or refunding bonds and for the building of a courthouse, in counties in which courthouse has been destroyed.''

There is no escape from the conclusion that this Code Section prohibits the counties of Tennessee from issuing bonds to build a courthouse without first receiving the assent of the qualified voters at an election, except in cases ''in which [the] courthouse has been destroyed''. It is not suggested that the courthouse which Chapter 671 authorizes is for the purpose of replacing a destroyed courthouse.

In *Town of McMinnville* v. *Curtis*, 183 Tenn. 449, 192 S. W. (2d) 998, it was held, citing cases, that a special act affecting one particular county alone in its governmental capacity in a manner contrary to the provisions of the general law to which all other counties must conform is void, unless the discrimination made by the special act is upon a reasonable basis. This rule was reiterated in *Southern* v. *Beeler, supra.*

No reason appears to us, nor is any suggested by counsel, as to why Polk County should be permitted to issue bonds without a vote of the people for the purpose of building a new courthouse (not replacing one that has been destroyed), while that privilege is expressly withheld from every other county of the State. There is no reasonable basis for the discrimination. We are, accordingly, compelled to hold that Chapter 671 is in violation of Article 11, Section 8, in so far as it undertakes to authorize the issuance of $20,000.00 of bonds without a vote of the people with which to build the courthouse at Ducktown.

In thus holding Chapter 671 invalid to the extent just above stated, we have fully considered *Brittain* v. *Guthrie*, 164 Tenn. 669, 51 S. W. (2d) 848. In that case the bonds were to be issued for public school purposes and, therefore, under the Code Sections hereinbefore mentioned, it was not required that an election be first had. This, of course, was in the mind of the Court in that case. It is pointed out in *Southern* v. *Beeler, supra*, 183 Tenn. at pages 285, 286, 195 S. W. (2d) at page 863, that in the *Brittain* v. *Guthrie Case* the act under consideration created a particular school district, and, after providing for the issuance of bonds to build a schoolhouse in that school district, provided that each bond show on its face that taxes should be levied and collected only on property within that school district. So, the opinion in *Brittain* v. *Guthrie* held that this special act became the law of the school district which it affected. This school district was not the entire county, but a subdivision thereof. *Brittain* v. *Guthrie* must be confined to its own facts, and is not applicable here where an entire county unit as contemplated by Code Section 10248 is involved, and where there was involved school bonds to which Code Section 10248 does not apply.

It is the duty of the Courts to uphold the validity of a legislative enactment if it can legally do so. We are, thus, confronted with the question of whether Chapter 671, assuming it to be otherwise constitutional, can be saved under the doctrine of elision by eliminating from its body the provision with reference to the issuance of $20,000.00 of bonds to build the courthouse referred to.

In the case of *Bell* v. *Town of Pulaski*, 182 Tenn. 136, 184 S. W. (2d) 384, 387, this Court elided Section 3 of an act, Priv. Acts 1941, ch. 98, because that section was un-

constitutional, and, with this section eliminated, sustained the act. In doing so, it was said by Chief Justice GREEN who wrote the opinion for the Court that: ''When the Court can gather the paramount intention of legislative action, such intention will be given effect, although there exist some apparent obstacles.''

When the Legislature by the enactment of Chapter 671 authorized the issuance by Polk County of $520,-000.00 of bonds and directed that more than 96% thereof should be expended for the school purposes stated and less than 4% thereof for the building of this courthouse there is left no doubt but that the paramount purpose of the Legislature in enacting this act was to provide funds for those school purposes and that the provision with reference to the courthouse was relatively unimportant. Reason requires the conclusion that the Legislature would have enacted this act if, in the first instance, there had been omitted therefrom the provision with reference to the courthouse. We, therefore, hold that this provision with reference to issuing bonds for the building of the courthouse should be elided from the body of the act and that act stand as though such provision had never been included in its body.

Appellants say that the caption of this act violates Article 2, Section 17 in that it expresses two subjects, namely bonds for school purposes mentioned and bonds for the erection of a courthouse in Ducktown. In considering this insistence it must be kept in mind that due to the elision above made the body of this act contains no provision with reference to the issuance of bonds for the building of the courthouse.

In *State ex rel.* v. *Hamby*, 114 Tenn. 361, 364, 84 S. W. 622, this Court said:

"We do not think that either the title or the body of this statute embraces two subjects. If the title did—and complainant seems to press this point with more confidence against it than the body of the act—it would be immaterial. The constitutional provision invoked does not apply to the title, but to the body, of the bill, the effective operative part of the statute—the law that is made. It is no objection to a bill that the caption is broader than the enacting part, . . . ''

This statement in that case is referred to and adopted as the rule in *Knoxville* v. *Gass*, 119 Tenn. 438, 451, 104 S. W. 1084. In *Palmer* v. *Southern Express Co.*, 129 Tenn. 116, 156, 165 S. W. 236, 246, the Court observed that since *Knoxville* v. *Gass*, *supra*, it has been consistently held "that, even if the title be double, the act will be saved, if only one of the subjects be embraced in the body of the act, since the body need not be as broad as the title."

While discussing Article 2, Section 17 this Court in *Cannon* v. *Mathes*, 55 Tenn. 504, 521 observed that: "There has been a general disposition to construe the constitutional provisions liberally, rather than to embarrass legislation by a construction whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." The rule announced and consistently followed in the cases above cited and quoted from are in keeping with this general disposition. Considering the elision made, and considering the fact that the act is not broader than the caption, we, therefore, hold upon the authority of the cases above cited, that Chapter 671 does not violate Section 17 of Article 2 of the Constitution.

It is also insisted that the act violates Section 8 of Articles 1 and 11 in that it requires the bonds to go to

the construction of school buildings in two particular sections of Polk County, but levies a tax on all the property in the county to pay these bonds. *Southern* v. *Beeler, supra,* is cited in support of this insistence. The point in this connection under consideration in *Southern* v. *Beeler* was the validity of a private act authorizing Knox County to issue bonds for school building purposes but withholding any portion of the proceeds of the bonds from the City of Knoxville, which maintained a separate school system. Under the general law applicable to all other counties and cities, it is provided, Code, Section 2563, that in counties which had a city operating an independent school system the proceeds of the sale of such bonds shall be divided between the city and the county in proportion to the scholastic population. As observed above, the City of Knoxville in Knox County maintained a separate school system. It is quite obvious that this act undertook to arbitrarily except Knox County from the general law mandatorily applicable to all other counties, and, therefore, was void. That holding is not, however, in point here. It is stipulated that there are no municipalities in Polk County operating an independent school system.

The people of Polk County have an interest in public education in the communities of Benton and Copperhill. Those communities are a part of the county school system. Had the Board of Education placed in the school budget a sum for the erection of school buildings at Benton and Copperhill, and if the Quarterly Court had adopted that budget, the tax to defray the cost of such buildings would have been levied upon all the property in Polk County. The authority of the Board of Education to select the school sites is given by the Legislature. We can think of no reason why the Legislature cannot

itself select these school sites, if it can delegate that authority to the county board of education. If the insistence of appellants on this point should be sustained and followed to a natural conclusion, the result would be that every community in a county would have to defray the expense of building and maintaining its own school building. With deference to counsel, we think this insistence lacks substance. It is rejected.

Finally, it is said that Chapter 671 violates the equal protection and non-discriminatory clauses of the constitution in that under the general law warrants on the school funds are drawn by the officials of the Board of Education and not the Board of Commissioners, as provided by the general law, and that the Board of Commissioners, contrary to general law, are authorized to handle the school funds derived from the sale of these bonds rather than the Board of Education, and that the act does not say whether the proceeds of the bond issue are to be used for building, repairing, etc., of an elementary or a high school and, therefore, too indefinite for enforcement, and that, contrary to the general law, the trustee is not required to keep the elementary and high school funds derived from the sale of these bonds separate and apart.

The response to this insistence is that no authority is taken from the Board of Education with reference to this money other than the act of signing the warrants in payment of the bills which the Board of Education is authorized by the act to specify, and which the Board of Commissioners is thereby required to pay. The Act does not take away from the Board of Education the authority given it by the general law to determine whether a given school shall be an elementary or high school. It has the authority given it under the general law to determine whether in these buildings the school maintained shall

be an elementary or a high school, or both. To the Board of Education alone is delegated the authority to make the plans and specifications of the building.

Nor do we think the act is indefinite as to the purpose for which the people are being taxed. It plainly says that the bonds are to be issued for the erection of two school buildings at the places indicated at a cost of not to exceed $200,000.00 for each place, and according to plans and specifications of the Board of Education that $100,000.00 of the money derived from the sale of the bonds is to be applied to such repairs, rebuilding and equipment of present or future buildings as the Board of Education directs by its plans and specifications from time to time. The act directs the trustee to keep this fund separate and apart from all other funds.

It is our opinion that, except in so far as it applies to the issuance of bonds for the erection of the courthouse at Ducktown, Chapter 671 is a valid enactment, and we so hold.

At the conclusion of the hearing in the Chancery Court the Chancellor allowed the solicitors representing Polk County a fee for their services to be paid by Polk County. Polk County (referring, presumably to the Board of Commissioners) has been allowed a special appeal, in order to insist that there was no authority for the allowance of this fee as a charge against the County.

The Quarterly Court of Polk County by a resolution employed these two solicitors to file an intervening petition in the case for the purpose of attacking the constitutionality of each of the acts which we have discussed. It is not suggested, nor does it appear that this action upon the part of the Quarterly Court was not in good faith. We have held a portion of one of the acts unconstitutional.

The insistence of Polk County is that in as much as these acts have been held constitutional there was no authority in the Quarterly Court to employ counsel. We think this insistence rather begs the question and, in fact, we have herein held one provision of Chapter 671 unconstitutional. The acts in question are quite important. If the Quarterly Court, acting in good faith conceived these acts, or either of them, to be unconstitutional, it had clearly the right to protect the interest of the county by employing counsel to make that insistence by proper proceedings in Court. Appellees here cite *McHenderson* v. *Anderson County*, 105 Tenn. 591, 59 S. W. 1016 as authority for the proposition that the Quarterly Court was authorized to employ these solicitors. No doubt other cases to the same effect could be found. We think the assignment of error directed to this proposition is not well taken.

It results that the decree of the Chancellor adjudging Chapters 367 and 671 constitutional and adjudging this fee to the solicitors employed by the Quarterly Court is modified only to the extent of holding that the portion of Chapter 671 directing the issuance of bonds to the amount of $20,000.00 for the building of a courthouse at Ducktown is unconstitutional and is elided from the act. As so modified, the decree is affirmed, with costs adjudged one-half against Polk County and the other one-half against the remaining appellants and the sureties on their appeal bond.

All concur.

## ON PETITION TO REHEAR.

Two petitions to rehear, one in the name of Polk County, as such, and the other in the name of the Commis-

sioners of Polk County, as such, have been filed. Both petitions present the same two questions.

In the opinion announced by this Court on May 3, 1948, we sustained the action of the Chancellor in holding that the Quarterly Court of Polk County had authority to employ lawyers for the purpose of challenging the constitutionality of Chapter 367 of the Private Acts of 1947 applicable to Polk County and in allowing these lawyers a fee for their services to be paid by Polk County. Both petitions insist that this Court is in error in so holding.

Perhaps a statement of the legal situation existing up to the time of the enactment of Chapter 367 and of the factual situation existing thereafter by reason of the enactment of this statute will very materially aid in making clear the principle which controls the question as to whether the Quarterly Court had the authority to employ counsel for the purpose of attacking the validity of this act and make these lawyers' fees a legal charge against Polk County.

Until the enactment of Chapter 367 the status of the Quarterly Court of Polk County with reference to the affairs of that county and of their duties with reference thereto is restated by this Court in *State ex rel.* v. *Read,* 152 Tenn. 442, 446, 447, 278 S. W. 71, 72, thus:

"The justices of the county court, assembled in quarterly session, are the representatives of the county, and are authorized to act for it. Shannon's Code, sec. 493. They are charged with the duties appertaining to and annexed by law to their assembled organization, commonly called the quarterly court. . . . The county is idealized as a corporate body, represented by the justices, who occupy the relation of directors, exercising powers regulated by law. . . . Through the county court thus constituted the county, in its municipal character as a

corporation, acts and is acted upon. It cannot act otherwise than through the justices in respect to many important matters of public concern."

It must be conceded that one of the duties of this Quarterly Court prior to the enactment of Chapter 367 was to prevent the illegal expenditure of the funds of the county.

Until the passage of Chapter 367 it was only through this Quarterly Court that Polk County as a corporation could act to prevent the illegal expenditure of its funds. Until the passage of that act, the Quarterly Court of Polk County, acting through its justices, would have been legally and morally derelict in its duty if it had witnessed or had had brought to its attention as a fact that the money of Polk County was being illegally expended, and having so witnessed or being informed thereof had failed to institute suit, if necessary, to prevent such illegal expenditure.

The expenditure of the funds of Polk County by virtue of an unconstitutional statute is an illegal expenditure of those funds. Until the passage of Chapter 367 the Quarterly Court would have been derelict in its duty had it failed to institute proceedings for the purpose of having judicially declared void a statute which it knew to be unconstitutional and by virtue of which unconstitutional statute the funds of Polk County were being expended.

Often it cannot be known with certainty whether a particular statute is unconstitutional until the Court of last resort having jurisdiction has ruled upon it.

So, the law does not require the Quarterly Court, before instituting suit for the purpose of procuring a decree declaring a statute unconstitutional, to have absolute knowledge that the act is unconstitutional. Such a requirement would be absurd. The extent of the re-

quirement is that the Quarterly Court institute that suit in good faith. If it honestly believes a statute which is causing an expenditure of the county's money to be unconstitutional, it not only has the right but it is its duty to institute suit. It does not file that suit at its peril. In the case of *Crockett County* v. *Waters*, 170 Tenn. 337, 95 S. W. (2d) 305, 306, this Court speaking through Chief Justice GREEN said:

"The defendants' first contention is that complainants (Crockett County) have no right to bring this suit. We do not find merit in this. There was a *bona fide* controversy between the county, as represented by the quarterly county court, and the defendant officials as to the constitutionality and effect of chapter 26 of the Private Acts of 1933; the controversy was real; and the parties had a real interest in the determination of the question."

Chapter 367, Private Acts of 1947, proposed to make very substantial changes in the governmental affairs of Polk County, and proposed the expenditure of necessarily large sums of its money in the administration of those affairs. If Chapter 367 had been unconstitutional, and if the Quarterly Court had known that, it would have failed in its duty, had it not instituted suit for the purpose of procuring a decree to that effect. Of course, the members of the Quarterly Court of Polk County did not know that the act was unconstitutional; but they in good faith believed that it was. This being their belief, these justices speaking as a Quarterly Court not only had the right, but it was their duty, to ascertain by this suit whether their belief honestly entertained was in fact the truth. If its attack had been successful its authority would not be questioned. To so question because the attack honestly believed was unsuccessful is to say that it

acts in such instances at its peril. We do not understand this to be the law.

Chapter 367 transferred from the Quarterly County Court to a Board of County Commissioners all governmental affairs of Polk County, except those duties and rights conferred upon that court by the Constitution. This act if valid relieved the Quarterly Court of its power and duty to institute suits for the protection of the county to employ attorneys in connection therewith. This Court has held the act to be valid. Therefore, the petitioners say the Quarterly Court was without such authority. As previously noted, had it been held invalid, as the Quarterly Court thought it would be, the authority of the Quarterly Court to institute this suit and employ these attorneys could not be questioned.

So, the solution of this question gets down to this: Until the passage of Chapter 367 it was the duty of the Quarterly Court to institute suit for the purpose of testing the validity of any statute affecting the affairs of Polk County which it in good faith thought to be unconstitutional. Chapter 367 did vitally affect the affairs of Polk County and this Quarterly Court thought in good faith that the act was unconstitutional. It was, therefore, as much its duty to institute this suit for the protection of Polk County as it would have been to institute suit to protect Polk County against the effect of any other act whch it deemed to be unconstitutional. As the situation arose, its duty could not be completed until the Court had determined whether its belief that the act was unconstitutional was correct. That being true, we are of the opinion that the Quarterly Court under the very peculiar facts of this case did have the authority and was under the duty to institute this suit and to employ law-

yers to represent it in this matter, and make their reasonable fees a legal charge against the county.

We think the error into which the petitioners have fallen is in failing to take note of the fact that this is a *bona fide* controversy between two sets of county officials as to which is vested with the authority to do certain acts under the law.

In the case of *County Board of Highway Comr's v. Wilde*, 179 Tenn. 141, 163 S. W. (2d) 329, 332, there was a disagreement between the highway commissioners of Madison County and the Quarterly Court as to which of these two boards had certain authority under a specified statute. The highway commissioners instituted suit against the county but were unsuccessful in their suit. So, the question was made as to whether Madison County should be charged with the costs of that suit. Chief Justice GREEN writing the opinion for the Court said:

"Some question is made by the defendants as to the right of complainants to maintain this suit. In so far as the bill sought a declaratory judgment, we think it was properly brought. There was a *bona fide* controversy between two sets of county officials. . . .

"This being a *bona fide* controversy between county officials as to their respective rights, we think the entire costs should be paid by Madison County."

The costs referred to were, as we understand the opinion, court costs, but the principal is the same. In this case, there was a *bona fide* controversy between county officials as to their respective rights by reason of Chapter 367. Whether the three commissioners had the authority to manage the governmental affairs of Polk County and expend its funds depended upon whether Chapter 367 is valid. The Quarterly Court did

not think the act valid. If not valid, it was the duty of the Quarterly Court to prevent what would have then been an illegal expenditure. The duties imposed upon the Quarterly Court before the enactment of Chapter 367 could not be completed until it ascertained whether such enactment was valid, since it believed otherwise. The only way it could complete that duty was by instituting this suit. In so doing, it was necessary to employ these lawyers. The reasonable fee for their services is, therefore, a liability of Polk County.

Petitioners are mistaken in their conclusion that the Court is in error in thinking that Polk County is a complainant instead of a defendant. The Court understands and understood the situation. The Quarterly Court called itself Polk County and was given permission to intervene as a complainant. The three commissioners created by the act in question called themselves Polk County and as such a defendant. This anomalous situation was a part of the same contest between these two sets of officials, each set honestly thinking its position to be correct. The situation is quite similar to that which existed in *Crockett County* v. *Walters, supra.*

In the opinion heretofore announced in this Case we held invalid so much of Chapter 671 of the Private Acts of 1947 as undertook to authorize the issuance of bonds for the purpose of erecting a courthouse at Ducktown because such provision arbitrarily suspended the general law forbidding the issuance of such bonds without a referendum except in instances ''in which courthouses has been destroyed.'' Code sec. 10248.

The petition to rehear states that as a matter of fact the courthouse at Ducktown was burned and the proceeds of these bonds are intended for the pur-

pose of rebuilding it. We are requested either to take judicial knowledge of the fact just stated or remand this Case to the Chancery Court for the purpose of having proof taken to establish that fact. It is said that the matter is urgent.

Notwithstanding the fact that the Court would like to assist in any way it properly can in overcoming this unfortunate situation which apparently has been brought about by an inadvertance, we are unable to find any way out of the difficulty. The sole question which we can determine is the validity of the above mentioned provision as that provision appears in the statute. In order to make that provision valid it would be necessary for us to add to the statute a recital that these bonds were for a courthouse-that had been destroyed. We are not permitted to do that. No doubt it was left out of the statute by oversight. "Such an oversight is termed in law a *'casus omissus'*". In the case of *Hickman* v. *Wright*, 141 Tenn. 412, 418, 210 S. W. 447, 448, this Court held:

"A pure *'casus omissus'* occuring in a statute can never be supplied or relieved against by the court under any rule or canon of construction or interpretation."

This holding of our Court is consistent with the general rule "that nothing may be read into a statute which is not within the manifest intention of the Legislature as gathered from the act itself". 50 A. J. page 214, 215.

Under these authorities by which we are bound the question is foreclosed. The petitions to rehear are denied.

All concur.